**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASON GOODMAN,<br><br>     Plaintiff,<br><br>v.<br><br>THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY POLICE DEPARTMENT LIEUTENANT GEORGE EBRAHIM, NEW YORK CITY POLICE DEPARTMENT OFFICER CHANDLER CASTRO, NEW YORK CITY POLICE DEPARTMENT OFFICER JENNIFER CARUSO, NEW YORK CITY POLICE DEPARTMENT OFFICER KELVIN GARCIA, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JANE DOE, (fictitious names intended to be officers, representatives, agents, servants of the New York City Police Department, individually and in their official capacities, ELON MUSK, X CORP, ADAM SHARP,<br><br>     Defendants. | No. 1:23-cv-09648-JGLC<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT X CORP.'S MOTION TO DISMISS**
**THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................1

        A.      Plaintiff's Alleged Altercations with Doe Defendants and NYPD Officers
                Outside X Corp.'s Office ....................................................................................1

        B.      Plaintiff's Alleged Subsequent Interactions With NYPD.................................4

        C.      Plaintiff's Suspicions About a Purported Agreement Between X Corp. and
                Other Defendants .................................................................................................6

        D.      Plaintiff's Complaint...........................................................................................6

III.    LEGAL STANDARD.........................................................................................7

IV.     ARGUMENT .....................................................................................................8

        A.      Plaintiff Fails to State a Plausible Section 1983 Claim Against X Corp. ..............8

                1.      Plaintiff Does Not Plausibly Allege X Corp. Violated His Federal
                        Rights .........................................................................................................8

                2.      Plaintiff Does Not Plausibly Allege X Corp. Acted Under Color of
                        State Law ..................................................................................................10

        B.      This Court Should Not Grant Leave to Amend ..................................................13

V.      CONCLUSION..................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
   526 U.S. 40 (1999) ........................................................................................................ 11

*Ambase Corp v. City Investing Co. Liquidating Trust,*
   326 F.3d 63 (2d Cir. 2003) ............................................................................................ 3

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................................... 8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................................... 8

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,*
   531 U.S. 288 (2001) ................................................................................................ 11, 12

*Brown v. Nassau Cnty. Police Dep't,*
   2014 WL 1401510 (E.D.N.Y. Apr. 8, 2014) ................................................................ 13

*Brown v. Twitter, Automattic Inc.,*
   2021 WL 3887611 (S.D.N.Y. Aug. 31, 2021) ............................................................. 8

*Candelario v. Quality Choice Corr. Healthcare,*
   2017 WL 3049553 (S.D.N.Y. July 18, 2017) ............................................................... 10

*Colabella v. Am. Inst. of Certified Pub. Accts.,*
   2011 WL 4532132 (E.D.N.Y. Sept. 28, 2011) ............................................................. 11

*Davis v. City of New York,*
   2007 WL 2973695 (E.D.N.Y. Sept. 28, 2007) ............................................................. 12

*Fisk v. Letterman,*
   401 F. Supp. 2d 362 (S.D.N.Y. 2005) ......................................................................... 10

*Ginsberg v. Healey Car & Truck Leasing, Inc.,*
   189 F.3d 268 (2d Cir. 1999) ........................................................................................ 12

*Gitter v. Target Corp.,*
   2015 WL 5710454 (S.D.N.Y. Sept. 29, 2015) ............................................................. 12

*Goodman v. Bouzy,*
   2023 WL 4235851 (S.D.N.Y. June 28, 2023) ........................................................... 2, 3

*Goodman v. Bouzy,*
   2023 WL 8248614 (S.D.N.Y. Nov. 28, 2023) ............................................................. 3

*Goodman v. Sharp,*
   2022 WL 2702609 (S.D.N.Y. July 12, 2022) ............................................................. 3

*Green v. City of New York*,
   465 F.3d 65 (2d Cir. 2006) ........................................................................ 9

*Grogan v. Blooming Grove Volunteer Ambulance Corps*,
   768 F.3d 259 (2d Cir. 2014) ................................................................ 11, 12

*Hunt v. Alliance N. Am. Gov't Income Tr., Inc.*,
   159 F.3d 723 (2d Cir. 1998) ...................................................................... 13

*King v. Mitchell*,
   31 A.D.3d 958 (N.Y. App. Div. 2006) ...................................................... 10

*Lynch v. Southampton Animal Shelter Found. Inc.*,
   971 F. Supp. 2d 340 (E.D.N.Y. 2013) ...................................................... 11

*Matter of Elizabeth T.*,
   214 A.D.3d 815 (N.Y. App. Div. 2023) ...................................................... 10

*McGugan v. Aldana-Bernier*,
   752 F.3d 224 (2d Cir. 2014) ................................................................. 8, 10

*Meadows v. United Servs., Inc.*,
   963 F.3d 240 (2d Cir. 2020) ...................................................................... 12

*Monell v. Dep't of Social Serv. of the City of New York*,
   436 U.S. 658 (1978) .................................................................................... 9

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
   551 F. Supp. 3d 408 (S.D.N.Y. 2021) ......................................................... 3

*Nat'l Acad. of Television Arts & Scis., Inc. v. Goodman*,
   2023 WL 3989876 (2d Cir. June 14, 2023) ................................................. 3

*Penn Grp., LLC v. Slater*,
   2007 WL 2020099 (S.D.N.Y. June 13, 2007) ............................................. 3

*Pyramid Champlain Co. v. R.P. Brosseau & Co.*,
   267 A.D.2d 539 (N.Y. App. Div. 1999) ...................................................... 9

*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982) .................................................................................. 10

*Rojas v. Alexander's Dep't Store, Inc.*,
   924 F.2d 406 (2d Cir. 1990) ...................................................................... 9

*Sutton v. Stony Brook Univ.*,
   2021 WL 3667013 (E.D.N.Y. Aug. 18, 2021) .......................................... 13

*Sybalski v. Indep. Grp. Home Living Program, Inc.*,
   546 F.3d 255 (2d Cir. 2008) ................................................................ 11, 12

*Tasfay v. Ramos*,
   2022 WL 2338323 (S.D.N.Y. June 29, 2022) .......................................... 12

**Statutes**

42 U.S.C. § 1983................................................................................................*passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................ 1, 7

Federal Rule of Civil Procedure 15(a) .............................................................. 13

Federal Rule of Evidence 201 ............................................................................ 3

## I.     <u>INTRODUCTION</u>

Federal Rule of Civil Procedure 12(b)(6) compels dismissal of Plaintiff's claims against X Corp. Plaintiff asserts four claims against X Corp. for violation of his constitutional rights under 42 U.S.C. § 1983 ("Section 1983"). Plaintiff's claims are all based on various theories arising from Plaintiff's alleged quarrels with New York Police Department ("NYPD") police officers and Doe defendants in Fall 2022, when Plaintiff allegedly tried to record video outside of the building where X Corp.'s New York office is located. But Plaintiff does not allege any misconduct or harm by X Corp. Rather, Plaintiff "suspects" X Corp. entered into a contract for security services with the NYPD—a purely speculative allegation made without any supporting facts, and insufficient in any case to plausibly allege a Section 1983 claim against X Corp.

Amending the Complaint will not save Plaintiff's futile claims, particularly because Plaintiff's dispute is with the NYPD and the Doe defendants, not X Corp. This Court should dismiss the claims against X Corp. without leave to amend.

## II.     <u>BACKGROUND</u>

As detailed below, Plaintiff alleges he had a series of altercations in October and November 2022 with alleged NYPD officers and certain unnamed Doe defendants outside of the building where X Corp.'s New York office is located. However, with respect to X Corp. he alleges only that he "suspects" X Corp. entered into a purported agreement with the NYPD for a purported security detail whose members allegedly interacted with him.

### A.     **Plaintiff's Alleged Altercations with Doe Defendants and NYPD Officers Outside X Corp.'s Office**

Plaintiff alleges that on October 31, 2022 he read that Elon Musk, owner of X Corp., wanted to fire most of X Corp.'s employees, so Plaintiff "decided to do a livestream video broadcast standing outside" the building where X Corp.'s New York City office is located. Dkt. 1 ¶¶ 23, 31-32. Plaintiff "speculate[d]" that Musk "likely . . . was inside" the building, because Plaintiff allegedly saw a Tesla car "with New Jersey Dealership license plates" parked outside, and "a group of tall, burly individuals," who "appeared" to Plaintiff "to be security or law

enforcement," "standing around the car," while "additional individuals" were in a "black SUV parked directly behind the Tesla." *Id.* ¶¶ 33-34. Plaintiff allegedly saw "protrusions at the small of the back" of some of these individuals, which "caused him to believe they were carrying concealed firearms," though he does not allege seeing any firearms. *Id.* ¶ 33. Plaintiff alleges he had a "verbal altercation" with John Does 2-4 and Jane Doe, who were among those individuals and whom Plaintiff speculates could be NYPD police officers working as part of a security team for Musk, concerning Plaintiff's recording of video, during which John Doe 3 allegedly told Plaintiff to leave and stated, "this is my plantation" and "Black Lives Matters." *Id.* ¶ 35. Plaintiff alleges the argument ended when the police arrived. *Id.* ¶ 35.

The next day, after purportedly seeing a post on Twitter[1] indicating that Musk was present at X Corp.'s New York City office, Plaintiff allegedly returned to the street outside of the office because Plaintiff wanted to inform Musk about Plaintiff's report "The Twitter Coup." *Id.* ¶ 37. According to the Complaint, that report (which Plaintiff apparently did not publish until December 2022, the following month) accuses Adam Sharp, allegedly an X Corp. employee from 2010 to 2016, and District Judge Valerie Caproni, also a former general counsel of the FBI, of working "to violate the Fourth Amendment and multiple other state and federal laws, by granting the FBI and U.S Government virtually unfettered, clandestine access" to Twitter. *Id.* ¶ 28, Ex. E. The report names Sharp, Judge Caproni, and President Obama as "the three most important conspirators" of "one of the most sinister and sophisticated crimes in our nation's history," which purportedly occurred during the Obama presidency and before Judge Caproni left the FBI in 2011. *Id.* Ex. E. Plaintiff alleges he "first became aware of" Sharp in 2020, and Plaintiff began the "investigation" for his report after he and Sharp became "involved in prior legal action."[2] *Id.* ¶¶ 25, 27, 86. Judge Caproni allegedly presided over two of the lawsuits

---

[1] Twitter, the online social media platform, has been re-branded as "X." This memorandum continues to refer to the platform as "Twitter" and refers to the company as "X Corp."

[2] X Corp. has located three lawsuits between Plaintiff and Sharp in this Court; in each of them, Plaintiff's claims or counterclaims were dismissed with prejudice. *Goodman v. Bouzy*, 2023 WL 4235851, at *4 (S.D.N.Y. June 28, 2023); *Goodman v. Sharp*, 2022 WL 2702609, at *9

between Plaintiff and Sharp.[3] *Id.* Ex. E.

Plaintiff alleges he went home to write a letter and, later that evening, returned to the street outside of the office building where X Corp.'s New York City office is located. *Id.* ¶ 39. Plaintiff allegedly asked John Doe 1, an alleged security guard for Musk, who was standing near the Tesla, whether Plaintiff could "wait here outside this building and when Mr. Musk comes out, . . . ask [Musk] if [Plaintiff] can hand him" an envelope, which contained the letter. *Id.* ¶ 40. John Doe 1 allegedly "responded affirmatively" and "did not deny that Musk was expected to exit the building." *Id.* Plaintiff believed John Doe 1 had a "concealed firearm," though he does not allege seeing any indication of such a firearm. *Id.*

Plaintiff alleges that while he was waiting, John Doe 2, an individual Plaintiff had encountered the day before, approached John Doe 1 and said, "'y'all don't have to worry, we're gonna block all these cars for you.'" *Id.* ¶ 42. According to the Complaint, "[t]he interaction causes [Plaintiff] to believe John Doe 1 and Joe Doe 2 know each other and that either one or both of them are undercover law enforcement or part of a clandestine security team working for Musk, X Corp[.], . . . NYPD, or all of those." *Id.*

---

(S.D.N.Y. July 12, 2022); *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 433 (S.D.N.Y. 2021) ("*National Academy*"). In *Bouzy*, Magistrate Judge James L. Cott recommended that the Court "impose a filing injunction barring any future filings by [Plaintiff] against" Sharp in this Court. *Goodman v. Bouzy*, 2023 WL 8248614, at *3 (S.D.N.Y. Nov. 28, 2023).

[3] In *National Academy*, Judge Caproni entered an order finding Plaintiff "willfully violated" a protective order and "disregarded the authority of the Court," and requiring, as a sanction, that Plaintiff file a copy of the order in every lawsuit in which he is a party until February 22, 2024. 2022 WL 524737, at *3 (S.D.N.Y. Feb. 22, 2022), *aff'd sub nom. Nat'l Acad. of Television Arts & Scis., Inc. v. Goodman*, 2023 WL 3989876 (2d Cir. June 14, 2023). Judge Caproni recently amended the order to require that Plaintiff file a copy of the order in all pending lawsuits by December 4, 2023, and in any new lawsuits within one week of filing. Order at 2, *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, No. 20-7269-VEC-OTW (S.D.N.Y. Nov. 29, 2023), Dkt. 185. X Corp. requests this Court take judicial notice of Judge Caproni's amended order pursuant to Federal Rule of Evidence 201. *See Ambase Corp v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (noting courts may take judicial notice of facts "shown by the court's own records"); *Penn Grp., LLC v. Slater*, 2007 WL 2020099, at *4 n.2 (S.D.N.Y. June 13, 2007) ("Courts may take judicial notice of public filings, such as the court's own records . . . .").

Plaintiff alleges that shortly afterward he was approached by, and had another argument with, John Does 2-4 and Jane Doe. *Id.* ¶¶ 43-45. Jane Doe allegedly "thrust[] what appeared to be an NYPD badge" in front of Plaintiff's camera but did not identify herself as "NYPD." *Id.* ¶¶ 46, 48. She also allegedly "wield[ed] a pen like a stabbing weapon" and carried in her pockets "a large number of baseballs," which Plaintiff believes were "street fighting tools." *Id.* ¶¶ 52, 54. Plaintiff alleges when he deflected the pen, John Doe 2 "grab[bed]" Plaintiff and shouted, "Yo bro, backup, backup, backup." *Id.* ¶ 56. John Doe 2 then "put his hand at the base of [Plaintiff's] neck[,] pinning [Plaintiff] against the façade" of the building in a "careful, calculated way." *Id.* ¶¶ 56, 59. John Doe 2's actions caused Plaintiff "to believe that John Doe 2 could be an undercover NYPD officer" or other person with "some police, or other security or self-defense training." *Id.* ¶ 61.

John Doe 1 allegedly was nearby but did not intervene, despite Plaintiff's request to call the police. *Id.* ¶¶ 49, 53-54, 57-58. Plaintiff alleges he caused John Doe 2 to release him, after which Plaintiff called 911. *Id.* ¶¶ 63-64. John Does 2-4 and Jane Doe did not "flee the scene," causing Plaintiff to further suspect "they are affiliated with NYPD." *Id.* ¶ 65.

Plaintiff alleges several NYPD officers arrived, including George Ebrahim, Chandler Castro, and Jennifer Caruso, but none of them "examined [his] neck," and Castro "openly mocked" Plaintiff. *Id.* ¶ 66. John Doe 1 allegedly told the officers that he did not witness anything. *Id.* Plaintiff was cited "with a disorderly conduct summons." *Id.* ¶ 67.

Plaintiff alleges that "some third party" instructed the Doe defendants to "deter [Plaintiff] from [c]ommunicating with Musk." *Id.* ¶ 88. Plaintiff also alleges "Sharp would be highly motivated to prevent Musk from learning the allegations contained in [Plaintiff's] report" because "Musk could take action that would certainly lead to civil if not criminal prosecution" against Sharp. *Id.* ¶ 86.

### B.    Plaintiff's Alleged Subsequent Interactions With NYPD

On November 5, 2022, Plaintiff allegedly went to the 10th Precinct NYPD station "with the intention of amending the official report of the November 1 incident." *Id.* ¶ 70. Plaintiff

alleges he had an argument with police officers, including Castro and Kelvin Garcia, who prevented Plaintiff from amending the report or filing his own report. *See id.* ¶¶ 71-73. Plaintiff alleges he left the station because Garcia threatened to "call[] an ambulance . . . to take [Plaintiff] to the hospital." *Id.* ¶ 73.

On November 7, 2022, Plaintiff allegedly returned to the 10th Precinct station, where police officer Matthew Powlett answered a phone call in front of Plaintiff ("Powlett Call"). *Id.* ¶ 76. Plaintiff alleges he overheard Powlett's side of the conversation, during which Powlett discussed "two guys from Google that are going to be armed security" who "need to touch base" with the caller "to show . . . what identifiers they have," but Powlett did not want to "get into it too much" because he was in the presence of "someone who's like an assault victim," *i.e.*, Plaintiff. *Id.* ("Identifiers" is an "unclear term" to Plaintiff. *Id.* ¶ 82.) Plaintiff alleges "Powlett was aware [Plaintiff] had been recording the entire conversation." *Id.*

Plaintiff does not allege Powlett mentioned X Corp. at all, or that police officers provided off-duty security services or concealed carry permits. Nonetheless, Plaintiff alleges the Powlett Call "caused [him] to believe" NYPD officers "are in a regular practice of negotiating off duty or other unofficial private security work." *Id.* ¶ 77. "To learn more," Plaintiff alleges he contacted a detective to ask whether "[t]here's a legal process . . . with the NYPD" for a "professional bodyguard" to "legally concealed carry a gun in New York City" for "an event that included a celebrity speaker." *Id.* The detective allegedly responded that he believed "the law is very gray" and that he did not "want to give [Plaintiff] any wrong information." *Id.* Plaintiff alleges the detective gave him the "phone number for the legal records office," which Plaintiff called but got "no response." *Id.*

On January 24, 2023, Plaintiff allegedly was contacted by a police officer who had investigated Plaintiff's complaint. *Id.* ¶ 78. Plaintiff states the officer's conclusion "was not satisfactory" to Plaintiff and "was the final motivation toward bringing this instant action." *Id.*

### C.   Plaintiff's Suspicions About a Purported Agreement Between X Corp. and Other Defendants

Plaintiff alleges the Powlett Call "caused him to believe" NYPD officers "might be engaging in the trade of temporary, illicit, or otherwise illegal concealed carry permits, waives or some other 'identifiers.'" *Id.* ¶ 79. This belief, in turn, "caused [Plaintiff] to *suspect* that some similar arrangement *could have been made* with Musk, X Corp[.], . . . John Doe 1 or *another third party* which allowed Musk's private security to carry concealed firearms within New York City." *Id.* (emphasis added). From this suspicion, Plaintiff contends unidentified "[e]vidence *suggests* Defendants entered into an agreement with one another to provide various security services including illegally issued temporary concealed carry permits to support Musk's work at [X Corp.'s New York office] on October 31, 2022, and November 1, 2022." *Id.* ¶ 88 (emphasis added). Plaintiff also contends that "[i]n order to protect the illegal gun licensing operation, it was necessary for NYPD officers to prevent [Plaintiff] from exposing any illicit relationship between [his] attackers, NYPD, Musk, [and] X Corp." *Id.*

Plaintiff does not allege he has any knowledge of any such agreement, nor that anyone has suggested such an agreement exists. Plaintiff also does not allege this purported agreement, or any X Corp. policy, caused him any harm. Plaintiff does not even allege he interacted with X Corp. at all.

Plaintiff alleges Musk is sued individually, as the owner of X Corp., as "the employer of John Doe 1, and as a contractee to NYPD." *Id.* ¶ 18.b. Plaintiff also alleges the individually named NYPD Officers, as well as the Doe defendants, are "agents, servants, licensee, police officers, officers and/or employees" of unspecified "Defendants;" and, the Doe defendants are "officers, representative, agents, servants, contractors, deputies, assignees of Defendants NYC, the NYPD and/or Musk and X Corp[.]" *Id.* ¶¶ 20-21. Plaintiff does not allege any facts supporting his conclusory allegations of the existence of these connections and relationships.

### D.   Plaintiff's Complaint

The Complaint names as defendants (a) the City of New York; (b) the NYPD; (c) NYPD

6

officers Ebrahim, Castro, Caruso, and Garcia (collectively, "Officer Defendants"); (d) X Corp.; (e) Musk; (f) Sharp; (g) John Does 1-4; and (h) Jane Doe. Plaintiff asserts four claims against all defendants "pursuant to 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments." *Id.* ¶ 3. Plaintiff's claims are:

1. "Unlawful Detention"—based on John Doe 2 allegedly "restrict[ing] [Plaintiff's] movements . . . by confining [Plaintiff] . . . and holding him against his will" on November 1, 2022, as well as the Officer Defendants allegedly "forc[ing] Plaintiff to refrain from filing a police report (*id.* ¶¶ 91-92);

2. "Excessive Use of Force"—based on "Defendants NYC and NYPD['s]" alleged "policies" resulting in his alleged "det[ention] and assault[]," and NYPD's "fail[ing] to give constitutionally adequate dispersal orders prior to unlawfully assaulting and detaining" Plaintiff (*id.* ¶¶ 99-102);

3. "Infringement of First Amendment Rights / First Amendment Retaliation"—based on the NYPD and Officer Defendants' purported conduct to prevent Plaintiff from engaging in "journalism concerning X Corp., . . . Sharp, Musk and other parties" (*id.* ¶ 106); and

4. "Violation of Due Process and Racial Discrimination"—based on the Doe defendants' alleged "disparate treatment of [Plaintiff] because of race, color and/or national origin" by "racially profil[ing] Plaintiff, calling him a racist and presuming he feared" them and by "physical assault[] with the intent to cause serious injury to [a] white male," as well as based on the Officer Defendants' alleged issuing a false summons against Plaintiff, preventing him from filing a report, and threatening to him "with involuntary incarceration in a medical hospital" (*id.* ¶¶ 112-119).

For relief, Plaintiff seeks compensatory and punitive damages. *Id.* ¶ 121.

### III. <u>LEGAL STANDARD</u>

To withstand a motion to dismiss under Rule 12(b)(6), the plaintiff must plead factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

This standard applies to pro se complaints, which, though broadly construed, must "be enough to raise a right to relief above the speculative level." *Brown v. Twitter, Automattic Inc.*, 2021 WL 3887611, at *6 (S.D.N.Y. Aug. 31, 2021) (quoting *Twombly*, 550 U.S. at 555).

## IV.  ARGUMENT

### A.    Plaintiff Fails to State a Plausible Section 1983 Claim Against X Corp.

"To state a claim under § 1983, a plaintiff must allege [1] that defendants violated plaintiff's federal rights [2] while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014). Plaintiff fails to plausibly allege either element.

#### 1.    *Plaintiff Does Not Plausibly Allege X Corp. Violated His Federal Rights*

Plaintiff's claims are premised only on his alleged quarrels with the Doe defendants and Officer Defendants. Against X Corp., Plaintiff alleges that (i) he partially overheard the Powlett Call about "two guys from Google"—not X Corp.—"that are going to be armed security"; (ii) the Powlett Call "caused [Plaintiff] to *believe*" NYPD officers "are in a regular practice of negotiating off duty or other unofficial private security work" that may involve "illegal concealed carry permits"—even though the Powlett Call did not discuss NYPD officers' providing security or concealed carry permits; and (iii) Plaintiff's own belief about the purported "regular practice" "caused [Plaintiff] to *suspect* that some similar arrangement *could* have been made with Musk, X Corp[.], . . . John Doe 1 *or another third party*." Dkt. 1 ¶¶ 76-77, 79 (emphasis added). From these allegations, Plaintiff allegedly concluded that "Defendants entered into an agreement . . . to provide various security services including illegally issued temporary

concealed carry permits to support Musk's work . . . on October 31, 2022, and November 1, 2022." *Id.* ¶ 88. Plaintiff's allegations against X Corp. are wholly speculative—based only on a purported arrangement that Plaintiff only "suspect[s] . . . could have been made" with X Corp. after he allegedly overheard one side of the Powlett Call—and entirely devoid of any factual underpinnings supporting his speculations. These allegations cannot plausibly allege X Corp. violated any of Plaintiff's constitutional rights.

Even if Plaintiff had plausibly alleged X Corp. entered into the alleged contract Plaintiff "suspects" was made, Plaintiff still does not allege that purported agreement violated his federal rights, for several reasons.

*First*, to the extent Plaintiff contends the Doe defendants were employees or agents of X Corp. because of this purported contract, Plaintiff fails to plausibly allege a Section 1983 claim based on vicarious liability. "Private employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (citations omitted) (quoting *Monell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658, 691 (1978)); *see also Green v. City of New York*, 465 F.3d 65, 82 (2d Cir. 2006) ("St. Luke's also is not vicariously liable for any constitutional torts that its employees may have committed. . . . [P]laintiffs offer no evidence suggesting that St. Luke's had an unwritten policy that triggered the asserted violation of [their] constitutional rights." (citation omitted)).

*Second*, even if Plaintiff's speculative and groundless allegations that the Doe defendants were agents of X Corp. were credited as true,[4] Plaintiff does not allege they violated his rights

---

[4] To be sure, the Complaint fails to plausibly allege an agency relationship under New York law. Plaintiff does not allege any contractual provision or conduct by X Corp. that expressly or impliedly gave the Doe defendants actual or apparent authority to act on X Corp.'s behalf. *See Pyramid Champlain Co. v. R.P. Brosseau & Co.*, 267 A.D.2d 539, 544 (N.Y. App. Div. 1999) (no agency relationship where contracts between putative principal and agent "contain neither an express provision creating an agency relationship nor language from which one may be implied," and where putative principal's conduct did not "giv[e] rise to a reasonable belief that an agency

pursuant to any purported official X Corp. policy. *See Candelario v. Quality Choice Corr. Healthcare*, 2017 WL 3049553, at *6 (S.D.N.Y. July 18, 2017) (dismissing Section 1983 claim where plaintiff did "not assert[] that the policies of [private entity] were unconstitutional or themselves caused the constitutional foul he allegedly suffered"); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 375 (S.D.N.Y. 2005) ("[T]he plaintiff has not alleged that CBS, Viacom, or World Pants has a policy of violating individuals' civil rights. Therefore, no viable claim has been asserted against these defendants on the basis of either vicarious liability or their own corporate policies."). To the contrary, the only "policies" Plaintiff alleges were implicated are those of "Defendants NYC and NYPD"—not of X Corp. *See, e.g.*, Dkt. 1, ¶¶ 81, 99, 101-102, 114, 115.

In sum, Plaintiff fails to plausibly allege the first element of a claim for violation of Section 1983—that X Corp. violated his federal rights.

### 2. *Plaintiff Does Not Plausibly Allege X Corp. Acted Under Color of State Law*

Plaintiff also fails to plausibly allege the second element of a Section 1983 claim—that X Corp. acted under color of state law. Three tests exist to determine whether a "private entity acts under color of state law for purposes of § 1983": (1) the "compulsion test," (2) the "joint action" or "close nexus" test, and (3) the "public function test." *McGugan*, 752 F.3d at 229 (citing *Hogan v. A.O. Fox Mem'l Hosp.*, 346 Fed. App'x 627, 629 (2d Cir. 2009)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.*; *accord Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). Thus, courts begin the fair attribution inquiry for the three tests by "identifying the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Grogan v. Blooming*

---

relationship had been created"); *see also Matter of Elizabeth T.*, 214 A.D.3d 815, 817 (N.Y. App. Div. 2023) ("Actual authority granted to an agent to bind his principal is created by direct manifestations from the principal to the agent . . . ."); *King v. Mitchell*, 31 A.D.3d 958, 959 (N.Y. App. Div. 2006) ("Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to act on behalf of the principal." (internal quotation marks omitted)).

*Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014) (internal quotation marks omitted); *accord Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999).

Plaintiff's only allegations against X Corp. are that he "suspected" a contract or arrangement between X Corp. and NYPD for security services or concealed firearms "could have been made." Dkt. 1 ¶¶ 76, 79, 88. These allegations do not plausibly satisfy any of the three tests for establishing X Corp. acted under color of state law.

Plaintiff does not allege facts that would plausibly meet the compulsion test, which is satisfied when the private "entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)). "Put another way, the compulsion test is satisfied if a state exercises coercive power or provides such significant encouragement, either overt or covert, that the decision by the private actor must in law be deemed that of the State." *Lynch v. Southampton Animal Shelter Found. Inc.*, 971 F. Supp. 2d 340, 349 (E.D.N.Y. 2013) (cleaned up). "In this regard, courts look at whether the challenged activity was compelled or even influenced by state regulation." *Id.* (citing *Colabella v. Am. Inst. of Certified Pub. Accts.*, 2011 WL 4532132, at *11 (E.D.N.Y. Sept. 28, 2011)) (internal quotation marks omitted). Plaintiff does not allege facts that would establish X Corp. acted "pursuant to the 'coercive power' of the state," that the state "provide[d] . . . significant encouragement" to X Corp., either overt or covert, or that X Corp.'s actions were compelled or influenced by state regulation. *See Sybalski*, 546 F.3d at 257; *Lynch*, 971 F. Supp. 2d at 349. Thus, Plaintiff fails to plead facts sufficient to meet the compulsion test.

Plaintiff likewise fails to allege facts sufficient to satisfy the joint action or close nexus test. This test is satisfied when the private entity "is entwined with governmental policies, or when government is entwined in its management or control." *Grogan*, 768 F.3d at 264 (quoting *Brentwood Acad.*, 531 U.S. at 296) (internal quotation marks omitted). "Even where an entity has a contract with the government, in applying the nexus test courts examine the degree of control the government exercises over the entity's decision-making." *Gitter v. Target Corp.*,

2015 WL 5710454, at *3 (S.D.N.Y. Sept. 29, 2015). Plaintiff does not allege the government has any control over X Corp.'s decisions, or that X Corp. is entwined with any governmental policies. Thus, Plaintiff fails to allege facts that would plausibly meet this test.

Plaintiff also fails to allege facts that would plausibly satisfy the public function test. "Under the public function test, state action may be found in situations where an activity that traditionally has been the exclusive, or near exclusive, function of the State has been contracted out to a private entity." *Grogan*, 768 F.3d at 264-65 (cleaned up). "Accordingly, private actors must be delegated functions that were traditionally under the exclusive authority of the state for the public function test to be satisfied." *Sybalski*, 546 F.3d at 259. While Plaintiff "suspects" X Corp. contracted to *receive* security services *from* the NYPD, Plaintiff does not allege the reverse: that NYPD "contracted out" or otherwise delegated any function to X Corp. He therefore fails to allege facts that would plausibly meet this test.

Finally, even crediting his suspicion that X Corp. and the NYPD had entered into a contract, "[m]ere contracting . . . cannot support a claim of state action." *Davis v. City of New York*, 2007 WL 2973695, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Brentwood Acad.*, 531 U.S. at 307-08); *see also Tasfay v. Ramos*, 2022 WL 2338323, at *4-5 (S.D.N.Y. June 29, 2022) (none of the three tests were satisfied despite private entity's "contracts with the City of New York" where complaint does not allege any governmental funding or that entity "in some way answers to the government"), *report & recomm. adopted*, 2022 WL 3225623 (S.D.N.Y. Aug. 10, 2022), *appeal dismissed*, WL 6379740 (2d Cir. July 6, 2023). In other words, even if the Doe defendants were providing security to X Corp. pursuant to a contract that Plaintiff speculates exists, X Corp. still cannot be deemed to have acted under color of state law. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("[T]he mere fact that a private actor received police assistance is not sufficient to transform that private actor's conduct into state action for § 1983 purposes."); *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 273 (2d Cir. 1999) ("Section 1983 does not impose civil liability on persons who merely stand to benefit from an assertion of authority under color of law, but only on those who act under color

of law.").

In sum, the Complaint does not plausibly allege X Corp. acted under color of state law. Therefore, Plaintiff fails to state a plausible Section 1983 claim against X Corp.

**B.      This Court Should Not Grant Leave to Amend**

"Although [Rule] 15(a) provides that the district court should freely grant leave to amend when justice so requires, it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile." *Hunt v. Alliance N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998). Leave to amend should be denied here. Plaintiff's only allegations against X Corp. are that he "suspects" X Corp. might have a contract with NYPD—allegations that, even taken as true, could not make X Corp. liable for Plaintiff's claims against the City, NYPD, Officer Defendants, and Doe defendants for the reasons set forth above. This Court should not give Plaintiff an opportunity to replead his futile claims against X Corp. *See Sutton v. Stony Brook Univ.*, 2021 WL 3667013, at *10 (E.D.N.Y. Aug. 18, 2021), *aff'd*, 2022 WL 4479509 (2d Cir. Sept. 27, 2022) (dismissing pro se plaintiff's "wholly speculative" Section 1983 claim with prejudice); *Brown v. Nassau Cnty. Police Dep't*, 2014 WL 1401510, at *6 (E.D.N.Y. Apr. 8, 2014) (denying leave to amend initial complaint to reassert Section 1983 claim against private party).

**V.      CONCLUSION**

For these reasons, this Court should dismiss the Complaint against X Corp. without leave to amend.

Respectfully submitted,

WILLENKEN LLP

 _/s/ Kenneth M. Trujillo-Jamison_
Kenneth M. Trujillo-Jamison
(motion for *pro hac vice* pending)
Peter Shimamoto
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

ktrujillo-jamison@willlenken.com

*Attorneys for Defendant X Corp.*

Dated: December 4, 2023