UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON GOODMAN,

         *Plaintiff*,

    v.

THE CITY OF NEW YORK and NEW YORK CITY
POLICE DEPARTMENT, NEW YORK CITY
POLICE DEPARTMENT LIEUTANANT GEORGE
EBRAHIM, NEW YORK CITY POLICY
DEPARTMENT OFFICER CHANDLER CASTRO,
NEW YORK CITY POLICE DEPARTMENT
OFFICER JENNIFER CARUSO, NEW YORK
CITY POLICE DEPARTMENT OFFICER KELVIN
GARCIA, JOHN DOE 1, JOHN DOE 2, JOHN DOE
3, JOHN DOE 4, JANE DOE, (fictitious names
intended to be officers, representatives, agents,
servants of the New York City Policy Department,
individually and in their official capacities, ELON
MUSK, X CORP, ADAM SHARP,

         *Defendants*.

1:23-cv-09648-JGLC-GWG

----------------------------------------------------------------------------------------------------------------

**DEFENDANT ADAM SHARP'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

----------------------------------------------------------------------------------------------------------------

Brian E. Middlebrook, Esq.
John T. Mills, Esq.
GORDON REES SCULLY MANSUKHANI, LLP
*Attorneys for Defendant Adam Sharp*
One Battery Bark Plaza, 28th Floor
New York, New York 10004
(212) 269-5500 (Phone)
(212) 269-5505 (Fax)
bmiddlebrook@grsm.com
jtmills@grsm.com

## **<u>TABLE OF CONTENTS</u>**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS .................................................................................. 1

    A.  The Academy of Televisions Arts & Sciences and The National Academy of Television Arts & Sciences successfully sued Goodman's company for copyright and trademark infringement ...................................................... 1

    B.  Goodman's frivolous claims in Goodman I are dismissed without leave to amend. ....................................................................................................... 2

    C.  Goodman seeks to relitigate the same claims in Goodman II, which was again dismissed without leave to amend. .................................................. 3

    D.  Goodman, admittedly without basis, again sues Sharp. ........................... 5

III.  ARGUMENT ....................................................................................................... 7

    A.  Standard for dismissal under Federal Rule of Civil Procedure 12(b)(6). .............. 7

    B.  Goodman's claims fail as a matter of law and should be dismissed. ..................... 8

    C.  Goodman should be barred from filing any additional documents involving Sharp in this District, and from filing any federal district court action (whether pro se or otherwise) against Sharp without leave of court. ......... 13

    D.  Goodman should not be given leave to amend. .................................................. 16

IV.  CONCLUSION.................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
　526 U.S. 40 (1999)......................................................................................... 10

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)......................................................................................... 8

*Barrows v. Becerra*,
　24 F.4th 116 (2d Cir. 2022) ......................................................................... 10, 11

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)....................................................................................... 7, 8

*Bell v. Jendell*,
　980 F. Supp. 2d 555 (S.D.N.Y. 2013).............................................................. 8

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*,
　531 U.S. 288 (2001)..................................................................................... 11, 12

*Brown v. Nassau Cnty. Policy Dep't*,
　2014 WL 1401510 (E.D.N.Y. Apr. 8, 2014) ...................................................... 16

*Brown v. Twitter, Automattic Inc.*,
　2021 WL 3887611 (S.D.N.Y. Aug. 31, 2021) .................................................... 8

*Caidor v. Onondaga Cnty.*,
　517 F.3d 601 (2d Cir. 2008)............................................................................ 8

*Cornejo v. Bell*,
　592 F.3d 121 (2d Cir. 2010)............................................................................ 9

*Dahlberg v. Becker*,
　748 F.2d 85 (2d Cir. 1984).............................................................................. 11

*Day v. Moscow*,
　955 F.2d 807 (2d Cir. 1992)............................................................................ 9

*Fabriant v. French*,
　691 F.3d 193 (2d Cir. 2012)............................................................................ 10

*Fletcher et al. v. Village of Lake Placid et al.*,
　2023 WL 8573860 (N.D.N.Y. Dec. 11, 2023)............................................ 10, 11, 13

*Gibbons v. Malone*,
  703 F.3d 595 (2d Cir. 2013)....................................................................... 8

*Gibson v. Pasta City*,
  2023 WL 8188431 (S.D.N.Y. Nov. 27, 2023) ................................. 10, 11

*Ginsberg v. Healey Car & Truck Leasing, Inc.*,
  189 F.3d 268 (2d Cir. 1999).................................................................... 12

*Glob. Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006)...................................................................... 2

*Goodman v. Bouzy et. al.*,
  No. 21-CV-10878, Dkt. 100 (S.D.N.Y.) ....................................... passim

*Goodman v. Sharp et. al.*,
  No. 21-CV-10627, Dkt. 1 (S.D.N.Y.) ............................... 3, 4, 9, 14

*Grogan v. Blooming Grove Volunteer Ambulance Corps*,
  768 F.3d 259 (2d Cir. 2014)........................................................... 11, 12

*Hogan v. A.O. Fox Mem'l Hosp.*,
  346 Fed. App'x 627 (2d Cir. 2009)........................................................ 10

*Hunt v. Alliance N. Am. Gov't Income Tr., Inc.*,
  159 F.3d 723 (2d Cir. 1998).................................................................... 16

*Interocieancia Corp. v. Sound Pilots, Inc.*,
  107 F.3d 86 (2d Cir. 1997)........................................................................ 9

*Johnson v. Priceline.com, Inc.*,
  711 F.3d 271 (2d Cir. 2013)...................................................................... 7

*Johnson v. U. of Rochester Med. Ctr.*,
  642 F.3d 121 (2d Cir. 2011).................................................................... 16

*Keiler v. Harlequin Enters. Ltd.*,
  751 F.3d 64 (2d Cir. 2014)........................................................................ 7

*McGugan v. Aldana-Bernier*,
  752 F.3d 224 (2d Cir. 2014)................................................................ 9, 10

*Meadows v. Buffalo Police Department*,
  2023 WL 1109747 (W.D.N.Y. Jan. 30, 2023) .................................... 11

*Meadows v. United Servs., Inc.*,
  963 F.3d 240 (2d Cir. 2020).................................................................... 12

*Missere v. Gross*,
    826 F. Supp. 2d 542 (S.D.N.Y. 2011)................................................................. 13

*Monahan v. New York City Dept. of Corrections*,
    214 F.3d 275 (2d Cir. 2000).......................................................................... 9

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
    2023 WL 3989876 (2d Cir. Jun 14, 2023) ....................................................... 2

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
    No. 22-592, Dkt. 171 (2d Cir. Sept. 6, 2023) ................................................. 2

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
    No. 20-CV-7269, Dkt. 1 (S.D.N.Y.)........................................................ passim

*Pangburn v. Culbertson*,
    200 F.3d 65 (2d Cir. 1999).......................................................................... 13

*Rodriguez v. Camba (Where You Can) Supportive Housing et al.*,
    2023 WL 8788922 (E.D.N.Y. Dec. 19, 2023) ...................................... 9, 10, 16

*Safir v. U.S. Lines, Inc.*,
    792 F.2d 19 (2d Cir. 1986)........................................................................... 14

*Schuster v. Charter*,
    2021 WL 1317370 (S.D.N.Y. Apr. 8, 2021) ................................................. 15

*Serbalik v. Gray*,
    27 F. Supp. 2d 127 (N.D.N.Y. 1998)............................................................ 13

*Singer v. Fulton Cnty. Sheriff*,
    63 F.3d 110 (2d Cir. 1995)........................................................................... 13

*Sutton v. Stony Brook Univ.*,
    2021 WL 3667013 (E.D.N.Y. Aug. 18, 2021), *aff'd*, 2022 WL 4479509 (2d
    Cir. Sept. 27, 2022) ..................................................................................... 16

*Sweigert v. Goodman*,
    2022 WL 168080 (S.D.N.Y. Jan. 19, 2022) ................................................. 15

*Sybalski v. Indep. Grp. Home Living Program, Inc.*,
    546 F.3d 255 (2d Cir. 2008)................................................................... 10, 11

*Sykes v. Bank of Am.*,
    723 F.3d 399 (2d Cir. 2013)......................................................................... 8, 10

*Waldman v. Village of Kiryas Joel*,
    39 F. Supp. 2d 370 (S.D.N.Y. 1999)............................................................. 9

*Ware v. United States*,
  2023 WL 2757206 (S.D.N.Y. Apr. 3, 2023) ........................................................................ 14

*Word v. Croce*,
  230 F. Supp. 2d 504 (S.D.N.Y. 2002) ................................................................................ 9

*Young v. Lugo*,
  2023 WL 2815718 (E.D.N.Y. Feb. 6, 2023) ...................................................................... 11

**Statutes**

42 U.S.C. § 1983 ............................................................................................................ passim

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 8

## I.    INTRODUCTION

Defendant Adam Sharp ("Sharp") moves to dismiss all claims against him set forth in the Complaint of Plaintiff Jason Goodman ("Plaintiff" or "Goodman") (the "Complaint") (Dkt. 1). Goodman is a vexatious *pro se* litigant and conspiracy theorist that has a long track record of bringing baseless, frivolous, harassing, and duplicative lawsuits, including against Sharp. Indeed, this is the *third* separate action brought by Goodman against Sharp in the span of two (2) years. All of Goodman's prior actions have been dismissed and his claims rejected as without merit, and the same result is warranted here.

For the reasons set forth herein, Sharp respectfully requests that the Court grant his Motion to Dismiss and dismiss these vexatious and baseless claims asserted in the Complaint, with prejudice and without leave to amend, and that a filing injunction be imposed barring Goodman from filing any additional documents involving Sharp in this District, and filing any federal district court action (whether *pro se* or otherwise) against Sharp without leave of court, together with such other and further relief as this Court may deem just, proper, and equitable

## II.    STATEMENT OF FACTS

### A.    The Academy of Televisions Arts & Sciences and The National Academy of Television Arts & Sciences successfully sued Goodman's company for copyright and trademark infringement.

In September 2020, The Academy of Television Arts & Sciences and The National Academy of Televisions Arts & Sciences[1] (collectively, "the Academies") sued Multimedia System Design, Inc. ("MSD"), a company owned and controlled by Goodman, in response to its infringing use of an image depicting the Academies' EMMY Award Statuette. *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc*., No. 20-CV-7269, Dkt. 1 (S.D.N.Y.)

---

[1] Sharp is the President and Chief Executive Officer of The National Academy of Television Arts and Sciences.

("*Academies v. MSD*")[2]; *see also* Complaint, ¶ 27.  On or about June 12, 2020, MSD posted an award show—entitled "Crony Awards"—on YouTube and other platforms.  *Academies v. MSD*, Dkt. 1, ¶ 29.  To market its show via social media, MSD, without authorization, created and used an image depicting the EMMY Award Statuette, but replaced the Statuette's atom with a depiction of the SARS-CoV-2 virus, as illustrated by the CDC (the "Infringing Image"), in violation of the copyrights of the Statuette owned by the Academies.  *Id*., ¶ 30.

The Academies exercised their rights under the Digital Millennium Copyright Act ("DMCA") by issuing a copyright violation notice to YouTube to regarding the Infringing Image. *Id.*, ¶ 34.  MSD responded by filing a DMCA counter notification and refused to withdraw it.  As a result, the Academies filed suit to protect their copyright and trademark rights.  *Id.*, ¶¶ 36–44. On February 22, 2022, the Academies prevailed on their copyright and trademark claims, and the Court issued an order granting a permanent injunction against MSD and awarding the Academies attorneys' fees and costs.  *Academies v. MSD*, Dkt. 157.  Goodman appealed portions of the Court's order in *Academies v. MSD*, including the sanctions order entered against him, and the Second Circuit denied Goodman's appeal in a unanimous ruling, as well as Goodman's petition for panel rehearing or rehearing *en banc*.  *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc*., 2023 WL 3989876 (2d Cir. Jun 14, 2023); *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc*., No. 22-592, Dkt. 171 (2d Cir. Sept. 6, 2023).

**B.     Goodman's frivolous claims in *Goodman I* are dismissed without leave to amend.**

On December 13, 2021, with default judgment imminent and in a blatant attempt to relitigate the *Academies v. MSD* action, Goodman filed an action in the Southern District of New

---

[2] The Court may take judicial notice of the pleadings filed in *Academies v. MSD* to establish the fact of such litigation and filings. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

York against, *inter alia*, the Academies and Sharp, which he later amended. *Goodman v. Sharp et. al.*, No. 21-CV-10627, Dkts. 1, 41 (S.D.N.Y.) ("*Goodman I*"). In that action, Goodman alleged that, before the action in *Academies v. MSD* was filed, Goodman offered to remove the alleged infringement if the Academies withdrew their complaint to YouTube. *Goodman I*, Dkt. 41 at ¶ 56. Goodman alleged at it was unreasonable for the Academies to reject his pre-litigation offer and file what Goodman believed was a malicious, and/or frivolous copyright claim, first with YouTube and then with the court, for the purpose of damaging and/or "penalizing" Goodman. *Id.*, ¶¶ 28, 42, 46–48, 51–56, 71–72, 77, 80. Much like the instant action, Goodman also alleged in that earlier action that the defendants, including Sharp, "collu[ded]" and acted as "co-conspirator[s]" to harm Goodman through the adjudication of its copyright claim. *Id.*, ¶¶ 33–34.

The defendants in *Goodman I*, including Sharp, moved to dismiss Goodman's claims both because the court lacked subject matter over Goodman's claims and Goodman failed to state plausible claims to relief, nor could he, on the merits. *Goodman I*, Dkt. 53. In a detailed opinion granting the motion to dismiss in its entirety, Judge Caproni dismissed all of Goodman's claims. *Goodman I*, 2022 WL 2702609, at *9 (S.D.N.Y. Jul. 12, 2022). Judge Caproni found that the court lacked subject matter over Goodman's claims, but also went on to address the merits of Goodman's claims. *Id.* at *3–9. Judge Caproni addressed each of Goodman's claims in detail and found that none could be cured by further amendment because Goodman "provid[ed] no indication that he can state a claim upon which relief could be granted" and, "[e]ven if granted leave to amend, Plaintiff would not be able to state a claim." *Id.* at *6, n.11.

### C. Goodman seeks to relitigate the same claims in *Goodman II*, which was again dismissed without leave to amend.

Goodman did not appeal Judge Caproni's dispositive decision on the merits in *Goodman I*. Instead, continuing in his vexatious conduct, Goodman repackaged the same factual allegations

into a new frivolous lawsuit that could and should have been included in *Goodman I*. *Goodman v. Bouzy et. al.*, No. 21-CV-10878, Dkt. 100 (S.D.N.Y.) ("*Goodman II*"). Specifically, on January 17, 2023—only six months after his prior case was dismissed without leave to amend—Goodman dragged Sharp into an ongoing litigation to which he has no connection, again speciously claiming that Sharp conspired with several other defendants to harm Goodman. *See Goodman II*, Dkt. 100. As its basis, Goodman parrots his false allegations from *Goodman I*, alleging claims of fraud, abuse of process, and civil conspiracy. *See id.*, ¶¶ 28, 52–61, 74–92.

On May 8, 2023, Judge Cott issued an Order and Report and Recommendation recommending that every motion to dismiss be granted and that "the entire case be dismissed with prejudice." *Goodman II*, Dkt. 203 at 1–2, 43–44. Judge Cott expressly stated: "Here, all of Goodman's claims lack merit and no further judicial resources should be expended in evaluating them in additional motion practice." *Id.* at 43. On June 12, 2023, Judge Cott issued another Report and Recommendation reiterating his recommendation for dismissal of the claims against Sharp based on failure to state a claim and *res judicata*. *Goodman II*, Dkt. 228 at 8. Judge Cott expressly stated: "Goodman should not be permitted to continue to file the same allegations against [Sharp] in multiple lawsuits." *Id.* Judge Cott also recommended that the Court imposing a filing injunction barring any future filings by Goodman in this District against Sharp without first obtaining leave of court to do so. *See id.*

On June 28, 2023, Judge Torres issued an order adopting Judge Cott's Report and Recommendation and dismissing the complaint against Sharp with prejudice. *Goodman II*, Dkt. 238. The Court entered judgment dismissing the Complaint the next day. *Goodman II*, Dkt. 239. While Judge Torres enjoined Goodman from filing actions against other defendants in *Goodman II*, it appears that given the number of motions and parties, Judge Torres overlooked Judge Cott's

recommendation as to an injunction against Sharp.  *Goodman II*, Dkt. 238.  Sharp filed a motion to amend the judgment and a motion for attorneys' fees, and Goodman filed a motion for reconsideration and an appeal of Judge Torres' order.  *Goodman II*, Dkt. 241-42, 248-49, 250-51, 258.

       Sharp's motion to amend the judgment requested that Judge Torres amend the filing injunction to prohibit any filings against Sharp without leave of court—notably, Goodman did not oppose this motion.  On November 28, 2023, Judge Cott issued a Report and Recommendation recommending that Judge Torres grant Sharp's motion for reconsideration and enjoin Goodman from any future filings against Sharp in this district without leave of court to do so, as he recommended in his June 12, 2023 Report and Recommendation which was not addressed in Judge Torres' June 28, 2023 Order.  *Goodman II*, Dkt. 269 at 3.  Judge Torres has not yet issued an Order in response to the Report and Recommendation, and Goodman's appeal of Judge Torres' June 28, 2023 Order remains stayed pending these post-judgment motions.  *Goodman II*, Dkt. 265.

    **D.**    **Goodman, admittedly without basis, again sues Sharp.**

       On October 31, 2023, with his claims against Sharp in *Goodman II* again dismissed without prejudice and without leave to amend, Goodman commenced the instant action against the City of New York, the New York City Police Department ("NYPD"), various police officers, certain unnamed Doe defendants (also police officers), X Corp., Musk and Sharp.  This case purports to involve Plaintiff's alleged interactions with NYPD officers and personnel in October and November 2022 when he allegedly tried to record video outside of the building where X Corp.'s New York office is located.  *See generally* Complaint.

       As against Sharp, however, Goodman does not allege any misconduct or harm by Sharp, nor does he allege any plausible basis to suggest that Sharp was in any manner connected with Goodman's interactions with the NYPD during the relevant time period.  Instead, acknowledging

that he has been involved in prior litigation with Sharp, Goodman makes the baseless allegation that Sharp, a former employee of X Corp. from 2010 through 2016, conspired with the Honorable Valerie Caproni while she was employed at the Federal Bureau of Investigation, which Goodman allegedly detailed in a report that he authored in December 2022.  Complaint, ¶¶ 25-30.  Goodman further alleges that Sharp "communicated with third parties . . . who in turn communicated with individuals who encourage, coerced, employed or otherwise directed to engage[] in a wide array of tactics . . . calculated to prevent Goodman from delivering information to Musk at the outset of his reorganization of X Corp[.] and preventing Goodman from publicizing true but unfavorable facts of these matters to the public."  *Id.*, ¶ 30.

Goodman simultaneously *admits* that he has no basis to make these striking allegations against Sharp, stating that he "expects to obtain [such] information" through discovery in this matter.  Complaint, ¶ 30; *see also id.*, ¶ 86 ("Sharp *would be* highly motivated to prevent Musk from learning the allegations contained in Goodman's report") (emphasis added).  By way of example, Goodman alleges in Paragraph 88 of the Complaint: "Evidence *suggests* Defendants entered into an agreement with one another to provide various security services . . ." (emphasis added).  But Goodman does not allege that he has knowledge of any such agreement, nor that anyone has suggested that such an agreement exists.  Nor does he allege that this purported agreement caused him any harm, that he interacted with Sharp concerning the subject matter of the Complaint, or that Sharp interacted with anyone concerning the subject matter of the Complaint.  Indeed, though the Complaint spans 122 paragraphs, the allegations against Sharp are contained to the aforementioned *seven (7)* paragraphs.  *Id.*, ¶¶ 26-30, 86.  Stated differently, Goodman's claims against Sharp here are premised upon nothing more than sheer speculation and

disdain for Sharp after each and every one of his claims against Sharp over the past four (4) years have been rejected.  This is palpably insufficient.

The claims alleged in the Complaint further evidence the lack of any basis for a claim against Sharp.  Goodman's first cause of action is for unlawful detention based on an NYPD officer allegedly restricting his movements and holding him against a wall, and another NYPD officer(s) allegedly forcing him to refrain from filing a police report.  Complaint, ¶¶ 91-92.  Goodman's second cause of action is for excessive use of force based on the NYPD policies resulting his alleged detention and assault and NYPD's alleged failure to give adequate dispersal orders prior to unlawfully assaulting and detaining him.  *Id.*, ¶¶ 99-102.  Goodman's third cause of action is for infringement of First Amendment rights/First Amendment retaliation based on the NYPD officers' alleged conduct to prevent him from engaging in "journalism concerning . . . Sharp . . ." *Id.*, ¶ 106.  Lastly, Goodman's fourth cause of action is for violation of due process and racial discrimination based, again, on the NYPD officers' alleged disparate treatment of him based on his race, color and/or national origin.  *Id.*, ¶¶ 112-119.  Much like his prior claims which have been dismissed, all of Goodman's claims against Sharp fail on their merits, are unmoored from fact and reality, are made for the purposes of harassment, and should be dismissed with prejudice.

## III.    ARGUMENT

### A.    Standard for dismissal under Federal Rule of Civil Procedure 12(b)(6).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  A complaint need not "contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014).  On a motion to dismiss,

a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. A court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Where, as here, a plaintiff proceeds *pro se*, the court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). But, this does not mean that *pro se* complaints are not subject to the *Twombly* pleading standards, as they allegations must "be enough to raise a right to relief above the speculative level." *Brown v. Twitter, Automattic Inc.*, 2021 WL 3887611, at *6 (S.D.N.Y. Aug. 31, 2021) (quoting *Twombly*, 550 U.S. at 555). Moreover, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

### B. Goodman's claims fail as a matter of law and should be dismissed.

Here, Goodman's claims against Sharp all fail to state plausible claims for relief and should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). As discussed above and more fully below, each and every one of the causes of action asserted against Sharp—and the Complaint in its entirety—is premised upon nothing more than sheer speculation, which is insufficient to meet

even the most liberal and rudimentary pleading standards. Thus, the Complaint against Sharp must be dismissed.[3]

Each of the four causes of action asserted in the Complaint sound in violation of 42 U.S.C. § 1983 for violations of the First, Fourth and Fourteenth Amendments. Complaint, ¶ 3. "To state a Section 1983 claim, a plaintiff must allege that the conduct at issue was 'committed by a person acting under color of state law' and that the conduct deprived the plaintiff 'of rights, privileges, or immunities secured by the Constitution or the laws of the United States.'" *Rodriguez v. Camba (Where You Can) Supportive Housing et al.*, 2023 WL 8788922, at *3 (E.D.N.Y. Dec. 19, 2023) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)); *see also McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014). Here, Goodman fails to plausibly allege either element.

First and foremost, Goodman fails to plausibly allege that Sharp did anything to deprive Goodman of any federally protected rights, privileges or immunities—or that Sharp did anything, for that matter. He claims that Sharp "communicated with third parties" who, in turn, communicated with individuals involved in his interactions with NYPD officers and personnel in October and November 2022. Complaint, ¶ 30. However, Goodman admits that he has no basis to make these striking assertions, stating that he "expects to obtain [such] information" through discovery in this matter. *Id.* Goodman doubles down on the frivolous nature of his claims against Sharp by stating that "Sharp *would be* highly motivated to prevent Musk from learning the allegations contained in [his] report." *Id.*, ¶ 86. These allegations are plainly premised on nothing more than conjecture and speculation, and are insufficient to plausibly allege that Sharp violated

---

[3] While unclear from the face of the complaint, to the extent that Goodman's claims against Sharp here in any manner overlap with the nucleus of operative facts forming the basis (or lack thereof) of the claims asserted in *Academies v. MSD*, *Goodman I*, or *Goodman II*, they are barred by the doctrine of *res judicata*. *Word v. Croce*, 230 F. Supp. 2d 504, 508 (S.D.N.Y. 2002) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)); *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 284–85 (2d Cir. 2000) (citation omitted); *Waldman v. Village of Kiryas Joel*, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (quoting *Interocieancia Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997)); *see also Goodman II*, Dkt. 206 at 7-11 (collecting cases).

Goodman's federal rights in any manner whatsoever. Goodman does not even attempt to set forth any factual allegations supporting his speculations, instead admitting that he has none. Thus, Goodman's claims are fatally deficient and must be dismissed.

Even if Goodman had plausibly alleged that Sharp violated his federal rights (which he has not), he also fails to plausibly allege that Sharp acted under color of state law. "Section 1983 may extend to private individuals or organizations in certain limited circumstances, such as where the private individual is engaged in a 'public function' or performs conduct that is 'fairly attributable to the state.'" *Rodriguez*, 2023 WL 8788922, at *3 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51, 55 (1999)). "Private parties are generally not state actors, and therefore are not usually liable under Section 1983." *Gibson v. Pasta City*, 2023 WL 8188431, at *4 (S.D.N.Y. Nov. 27, 2023) (citing *Sykes*, 723 F.3d at 406).

Three tests exist to determine whether a "private entity acts under color of state law for purposes of § 1983": (1) the "compulsion test," (2) the "joint action" or "close nexus" test, and (3) the "public function" test. *McGugan*, 752 F.3d at 229 (citing *Hogan v. A.O. Fox Mem'l Hosp.*, 346 Fed. App'x 627, 629 (2d Cir. 2009)); *see also Fletcher et al. v. Village of Lake Placid et al.*, 2023 WL 8573860, at *17 (N.D.N.Y. Dec. 11, 2023) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)); *Barrows v. Becerra*, 24 F.4th 116, 135 (2d Cir. 2022). "The 'fundamental question' for each test is whether the private party's conduct is 'fairly attributable' to the state such that it bears responsibility." *Fletcher*, 2023 WL 8573860, at *17 (quoting *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012)). "There is a two-part analytical approach to the question of fair attribution: a plaintiff must show that the allegedly wrongful action occurred as a result of the exercise of a state-created right of privilege, or by a state-imposed rule of conduct; and that the party charged with the deprivation is a person who is a state official or

someone whose conduct is otherwise chargeable to the State." *Id.* (quoting *Dahlberg v. Becker*, 748 F.2d 85, 89 (2d Cir. 1984)) (internal quotations omitted/cleaned up).

Before determining whether the requirements of the corresponding tests have been alleged, courts first begin by "identifying the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014) (internal quotation marks omitted). As discussed more fully above, Goodman does not allege any conduct by Sharp, much less specific conduct—rather, he purports to rely on conduct that he *suspects* may have occurred. This is woefully insufficient, and the Court's inquiry should stop there and the claims dismissed. *See Gibson*, 2023 WL 8188431, at *4 (dismissing Section 1983 claim where the "[p]laintiff allege[d] no facts showing that [the private entities] functioned as a state actor when [they] allegedly injured him").

Even if Goodman pled conduct showing that Sharp's actions are fairly attributable to the state (or any action by Sharp), he also fails to meet the requirements under each of the three tests. "The Second Circuit has 'identified three main tests to determine' whether an otherwise private [individual] has engaged in state action: (1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); and (3) when the entity has been delegated a public function by the state ('the public function test')." *Meadows v. Buffalo Police Department*, 2023 WL 1109747, at *10 (W.D.N.Y. Jan. 30, 2023) (quoting *Barrows*, 24 F.4th at 135)); *see also Sybalsi*, 546 F.3d at 257 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)); *Young v. Lugo*,

2023 WL 2815718, at *8 (E.D.N.Y. Feb. 6, 2023) (citations omitted); *see also Grogan*, 768 F.3d at 264 (quoting *Brentwood Acad.*, 531 U.S. at 269).

Goodman does not allege any facts which plausibly demonstrate that Sharp was acting under color of state law as is required in order to meet the pleading requirements for each of these three tests. Goodman does not allege any facts that would plausibly suggest that Sharp acted pursuant to the "coercive power" of the state, that the state provided "significant encouragement" to Sharp, either overt or covert, or that Sharp's actions were compelled or influenced by state regulation. Indeed, quite the opposite is true—Goodman does not allege any interactions between Sharp and the State (and admits that he cannot make such an allegation) and suggests that Sharp was motivated by personal interest. While Goodman alleges that Sharp was X Corp.'s "first ever U.S. Government Liaison, the Manager of Government and Political Partnerships, and later Head of News, Government and Election," Sharp has not worked for X Corp. since 2016—more than seven (7) years ago, far pre-dating the allegations in the Complaint. Complaint, ¶ 25. And, X Corp. is alleged to have been purchased by Elon Musk in October 2022, more than six (6) years after Sharp stopped working for the company. *Id.*, ¶ 23. Moreover, and perhaps more importantly, Goodman does not allege any involvement of Sharp with the City of New York or the NYPD (nor can he), as is relevant to the allegations in the Complaint.

Lastly, Goodman also makes no allegation that Sharp, at any time, was performing any public function. Goodman likewise makes no such allegation here, and fails to meet this test. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) ("[T]he mere fact that a private actor received police assistance is not sufficient to transform that private actor's conduct into state action for § 1983 purposes."); *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 273 (2d Cir. 1999) ("Section 1983 does not impose civil liability on persons who merely stand to

benefit from an assertion of authority under color of law, but only on those who act under color of law"). In sum, it is clear that Goodman's § 1983 claims against Sharp are entirely without merit for several separate and independent reasons as stated above, and must be dismissed for failure to state a claim. *See Fletcher*, 2023 WL 8573860, at *18 (citing *Missere v. Gross*, 826 F. Supp. 2d 542, 567 (S.D.N.Y. 2011); *Serbalik v. Gray*, 27 F. Supp. 2d 127, 131 (N.D.N.Y. 1998)).[4]

### C.    Goodman should be barred from filing any additional documents involving Sharp in this District, and from filing any federal district court action (whether *pro se* or otherwise) against Sharp without leave of court.

In addition to dismissing the claims against Sharp with prejudice, Sharp respectfully requests that this Court sanction Goodman and impose a filing injunction: (i) barring Goodman from filing any additional documents involving Sharp in this District; and (ii) filing any federal district court action (whether *pro se* or otherwise) against Sharp without leave of court. As discussed above, in *Goodman II*, Judge Cott recommended on June 12, 2023 that this same filing injunction be imposed. *Goodman II*, Dkt. 203. While Judge Torres did not enter the filing injunction based on what is an apparent administrative oversight, Sharp moved to amend the judgment to include this filing—a motion that Goodman *did not oppose*. *Id.*, Dkt. 238-39, 241-42. Yet, Goodman's vexatious conduct continued undeterred, filing the instant action against Sharp less than six (6) months later.[5]

---

[4] To the extent alleged, the Complaint also fails to state a claim for Section 1983 conspiracy. *See Fletcher* 2023 WL 8573860, at *11 ("To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. Although the pleading of a conspiracy will enable a plaintiff to bring suit against purely private individuals, the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right.") (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) and *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)) (internal quotations omitted). Here, for the reasons set forth above, to the extent alleged, Goodman likewise fails each and every element of a Section 1983 conspiracy claim.

[5] Following the filing of this suit, Judge Cott recommended that Sharp's motion to amend the judgment be granted. *Goodman II*, Dkt. 269. Judge Torres has not yet issued an Order in response to the Report and Recommendation, and, as such, Sharp is including this request for relief in the event that Judge Torres does not issue an order prior to adjudication of the instant motion or in the unlikely event that Judge Torres denies the requested relief. To the extent

As Judge Cott recognized, "[t]he issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings." *Goodman II*, Dkt. 203 at 34 (quoting *Ware v. United States*, 2023 WL 2757206, at *5 (S.D.N.Y. Apr. 3, 2023) (internal quotations/citations omitted). In "determining whether a litigant's behavior warrants a filing injunction[,]" the Court must consider:

"(1)  The litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative lawsuits;

(2)  The litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?

(3)  Whether the litigant is represented by counsel;

(4)  Whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and

(5)  Whether other sanctions would be adequate to protect the courts and other parties."

*Goodman II*, Dkt. 203 at 34-35 (citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). Each of these factors is clearly met here, and a filing injunction is warranted.

First, this is not the first lawsuit in which Goodman has been involved or has filed himself. *See Goodman II*, Dkt. 203 at 35-36 (listing cases). Indeed, this is not even the first lawsuit in which Goodman has been involved or filed against Movants. *See*, *e.g.*, *Academies v. MSD*, *Goodman I*, *Goodman II*. Second, in light of the arguments raised above and the dismissal of Goodman's claims with produce and without leave to amend in *Goodman I* and *Goodman II*, Goodman certainly does not, nor could he, have a good faith expectation of prevailing—to the

---

that Judge Torres issues an order before adjudication of the instant motion, Sharp will promptly advise the Court of same. As set forth more fully herein, it is apparent that a filing injunction is necessary to put an end to Goodman's vexatious conduct.

contrary, it is apparent that Goodman continues to bring baseless claims against Sharp for the sole purpose of harassment.

Third, while Goodman is *pro se*, he is certainly "not the average *pro se* litigant[,]" having commenced multiple actions as a *pro se* plaintiff, filing countless documents, motions and requests in each and every case. *See Goodman II*, Dkt. 203 at 35-36 (listing cases); *see also Schuster v. Charter Communications, Inc.*, 2021 WL 1317370, at *10 (S.D.N.Y. Apr. 8, 2021). Fourth, Goodman continues in his vexatious and frivolous path to file countless documents in each and every case and burden the Court with incessant, baseless, and harassing filings. As succinctly recognized by Judge Caproni, Goodman "clogs the docket with amended filings. Such behavior has to stop." *Sweigert v. Goodman*, 2022 WL 168080, at *10 (S.D.N.Y. Jan. 19, 2022).

Fifth, and perhaps most importantly, it is clear that, absent a filing injunction, "no lesser sanctions would suffice to protect the parties." *Goodman II*, Dkt. 203 at 37 (collecting cases). Indeed, this is the *third* separate action brought by Goodman against Sharp in the span of two (2) years. Despite the fact that each and every one of his claims has been dismissed with prejudice and without leave to amend, Goodman's path continues. What is worse, Goodman has indicated that he has no intention of ceasing his onslaught of filings. *See* https://twitter.com/jg_cstt/status/1725210827202941408?s=46&t=Kp3esrq0-lHaH7mbSMsVQw (last accessed Jan. 2, 2024). Goodman has been repeatedly admonished by courts, including Judges in this District, for engaging in this vexatious conduct, and his behavior has not stopped, and his penchant for burdening the Court's and the parties' resources with his baseless filings has not even slowed. Therefore, in light of the above, Sharp respectfully request that this Court issue an Order enjoining Goodman from: (i) filing any additional documents involving Sharp in this

District; and (ii) filing any federal district court action (whether *pro se* or otherwise) against Sharp without leave of court.

### D.    Goodman should not be given leave to amend.

Lastly, Goodman's Complaint against Sharp should be dismissed in its entirety with prejudice and without leave to amend.  "Although [Rule] 15(a) provides that the district court should freely grant leave to amend when justice so requires, it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile."  *Hunt v. Alliance N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998).  Here, it is clear that any proposed amendment to the Complaint against Sharp would be futile, as Goodman concedes that the claims against Sharp are premised upon nothing more than Goodman's conjecture, hopes and speculations, and there are no facts which Goodman could plausibly allege which give rise to a claim upon which relief may be granted.  This Court should not give Goodman an opportunity to replead his claims against Sharp where he has already admitted that no such claim(s) exist.  *See Sutton v. Stony Brook Univ.*, 2021 WL 3667013, at *10 (E.D.N.Y. Aug. 18, 2021), *aff'd*, 2022 WL 4479509 (2d Cir. Sept. 27, 2022) (dismissing pro se plaintiff's "wholly speculative" Section 1983 claim with prejudice); *Brown v. Nassau Cnty. Policy Dep't*, 2014 WL 1401510, at *6 (E.D.N.Y. Apr. 8, 2014) (denting leave to amend initial complaint to reassert Section 1983 claim against private party); *Rodriguez*, 2023 WL 8788922, at *3 (citing *Johnson v. U. of Rochester Med. Ctr.*, 642 F.3d 121, 124-25 (2d Cir. 2011)) (denying leave to amend Section 1983 claim despite duty to liberally construe *pro se* complaints).

## IV.    CONCLUSION

For the reasons and authorities above, Sharp respectfully requests that the Court grant his Motion to Dismiss and dismiss the vexatious, duplicative, and baseless claims Goodman asserts with prejudice and without leave to amend, together with such other and further relief as this Court

may deem just, proper, and equitable.  Additionally, Sharp also respectfully requests that this Court

enter an Order imposing a filing injunction against Goodman as set forth above.

Dated:         New York, New York
               January 2, 2024

                              Respectfully Submitted,

                              GORDON REES SCULLY MANSUKHANI, LLP

                              *Attorneys for Defendant Adam Sharp*

                              <u>*/s/ John Mills*</u>
                              Brian E. Middlebrook, Esq.
                              John T. Mills, Esq.
                              One Battery Park Plaza, 28th Floor
                              New York, New York 10004
                              (212) 269-5500 (Phone)
                              (212) 269-5505 (Fax)
                              bmiddlebrook@grsm.com
                              jtmills@grsm.com