IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X    23-cv-09648-JGLC-GWG
            JASON GOODMAN,

                    Plaintiff,    **RESPONSE IN OPPOSITION TO DEFENDANT ADAM SHARP'S MOTION TO DISMISS**

    -against-

THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY POLICE DEPARTMENT LIEUTENANT GEORGE EBRAHIM, NEW YORK CITY POLICE DEPARTMENT OFFICER CHANDLER CASTRO, NEW YORK CITY POLICE DEPARTMENT OFFICER JENNIFER CARUSO, NEW YORK CITY POLICE DEPARTMENT OFFICER KELVIN GARCIA, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JANE DOE, ELON MUSK, X CORP, ADAM SHARP.
                    Defendants.
------------------------------------------------------------------X

      Plaintiff, Jason Goodman, ("Goodman") by and for himself pro se, respectfully submits this response in opposition to the motion to dismiss filed by defendant Adam Sharp ("Sharp").

## INTRODUCTION

    1.    Defendant Sharp is a powerful media executive, an influential political operative, and was employed as X Corp's first ever U.S. Government Liaison in 2010 while it was still known as Twitter. Sharp, was called the "human embodiment of Twitter" by the New York Times in 2011 and he played an enormous role in shaping X Corp during its early days as Twitter. (https://www.nytimes.com/2011/01/30/us/politics/30twitter.html)

    2.    Because Sharp cannot refute Goodman's factual claims, the motion to dismiss persistently disparages him with the hollow, juvenile pejorative "conspiracy theorist."

    3.    Ironically, the conspiracy Goodman theorized about during October, November and in his December 22, 2022 publication, (https://crowdsourcethetruth.substack.com/p/the-twitter-coup) has now been proven by sworn testimony from X Corp's former head of Trust and

RESPONSE IN OPPOSITION TO DEFENDANT ADAM SHARP'S MOTION TO DISMISS   1

Safety, Yoel Roth and other former X Corp executives, (https://oversight.house.gov/wp-content/uploads/2023/02/Roth-House-Oversight-opening-statement-V4-Final.pdf).

4. The former X Corp executives' sworn testimony before the Select Subcommittee on the Weaponization of the Federal Government revealed extensive hidden communications between the FBI and X Corp employees.  The legality of this interaction remains under scrutiny by Congress and the United States Supreme Court, *Missouri v. Biden*, 144 S. Ct. 278 (2023).

5. FBI coercion of private sector companies has been sharply criticized as brazenly unconstitutional by respected legal experts, (https://jonathanturley.org/2022/11/30/washington-goes-to-war-against-twitter-and-free-speech/).

6. Unable to refute Goodman's well-founded evidence backed claims, defendant instead falsely alleges that Goodman has engaged in vexatious litigation designed to harass.

7. Goodman is not an attorney, although his life has become unpleasantly occupied with numerous legal cases brought against him by Sharp and his coconspirators.  Bringing frivolous litigation is not something Goodman is well situated to do and not of interest to him.

8. Sharp however has wrongfully used nearly one million dollars of tax-exempt funds as the CEO of NATAS to maliciously sue a false corporate entity to entrap Goodman.

9. Goodman never heard of Sharp before he ginned up malicious litigation intended to do harm.  Sharp deliberately decimated Goodman's business, drained his financial resources and attacked Goodman's ability to exercise the first amendment on social media.

10. Goodman's previous lawsuits attempted to redress those wrongful actions.  The substantially challenging effort was ultimately ineffective, but failure in litigation does not equate to an inherently vexatious or malicious purpose and the claims cited by Sharp do not appear in the new complaint in this instant action.  It is Sharp who seeks to relitigate the past.

RESPONSE IN OPPOSITION TO DEFENDANT ADAM SHARP'S MOTION TO DISMISS   2

11. This case is about events that took place on November 1, 2022, outside X Corp's New York Headquarters and Sharp's alleged role in the assault on Goodman by individuals employed, contracted, or otherwise functioning as security for X Corp and or its owner at that time, Elon Musk, ("Musk") with apparent special permission from the NYPD to carry concealed firearms in Manhattan against existing laws and city ordinances, probably as Special Patrolmen.

12. Goodman continues to allege that Sharp conspires persistently with non-party David George Sweigert, ("Sweigert") and has done so up to and including today, continuously.

13. Sweigert is a contract government "cyber security" employee who has already attempted to disrupt this case on Sharp's behalf. Sharp has never been questioned under oath about details that would unequivocally reveal his interaction and cooperation with Sweigert. Sharp should be compelled to testify on these matters before any claims are dismissed.

14. Goodman's factual claims are not mere speculation. U.S. District Court Judge Valerie Caproni was the FBI General Counsel during the time Sharp worked at X Corp. Sharp worked with Caproni in 2009 while he was Executive Producer at C-SPAN3 and she appeared on a C-SPAN3 broadcast, (https://www.c-span.org/video/?286761-2/security-privacy-technology).

15. Former FBI General Counsel and X Corp Deputy General Counsel James Baker was still employed at X Corp on November 1, 2022. Musk fired him in December for his role in censoring information published by the New York Post about Hunter Biden's laptop, (https://nypost.com/2022/12/06/elon-musk-fires-twitter-lawyer-james-baker-over-hunter-biden/).

16. Despite the fact that Sharp has been employed as the CEO of the National Academy of Television Arts and Sciences, ("NATAS") since 2018, he appeared on CNBC on October 28, 2020, in a segment called "Twitter's former head of news on what to expect from tech CEOs testifying on Capitol Hill." With the Presidential election only days away, and then

Twitter CEO Jack Dorsey testifying before Congress about the suppression of newsworthy information regarding the Biden laptop, Sharp appeared as a spokesman for Twitter and weighed in on public policy with regard to regulation of "disinformation" on the internet.

17. Previous claims from prior lawsuits between Sharp and Goodman are not at issue in this action. This background information is provided only because defendant's motion to dismiss attempts to paint the plaintiff as malicious and this action as frivolous, both are false.

18. Goodman would not have learned about Sharp's prior relationship with Judge Caproni if not for the malicious campaign of lawsuits and harassment coordinated by Sharp with non-party Sweigert. (*See Sweigert v Goodman* 1:18-cv-08653-VEC-SDA and *The National Academy of Television Arts and Sciences, Inc. and Academy of Television Arts & Sciences, v Multimedia System Design, Inc.  D/B/A "Crowdsource the Truth"*, 1:20-cv-07269-VEC-OTW).

19. It is no longer disputed that the FBI directly and extensively interacted with X Corp. Those claims can no longer be dismissed as conspiracy theories. But old claims are not being litigated here. This case pertains to new claims of ongoing attempts to hide the clandestine relationships after the previous litigation with Goodman, specifically on November 1, 2022.

20. When Goodman went to X Corp's New York City headquarters on November 1, 2022, to tell its new owner that the FBI was embedded in Twitter, this information was not known to Congress or the public, but it was known to Sharp and his alleged coconspirators.

21. Goodman alleges former X Corp employees including defendant conspired with the FBI and the NYPD. It is these new specific allegations that give rise to this instant action, not Sharp's self-manifested disputes with Goodman as alleged in the motion to dismiss.

22. It seemed outlandish in 2020 when Goodman claimed the CEO of the National Academy of Television Arts and Sciences was a political operative taking action undercover

against journalists and ordinary citizens exercising the first amendment on the internet. It seemed downright crazy to suggest that government agencies including the FBI were secretly censoring social media users and influencing what they could publish, but it is now proven true.

23. The motion to dismiss suggests that defendant misunderstood at least some of the allegations. Goodman did not claim that John Doe 2 who unlawfully detained him was an NYPD officer. Goodman claimed that he was an X Corp security employee or contractor who might also be an NYPD Auxiliary officer based on his demonstration of police training in the form of a carefully executed choke hold, his co-assailant displaying a badge, and the admission by NYPD Officer Jennifer Caruso that the assailants were "known to the department."

## DEFENDANT'S FALSE CLAIMS OF FACTS

24. This case is not about Goodman and Sharp's past litigation, but the motion to dismiss introduced a distorted version of that history, so it is responded to as follows;

**A. The Academy of Televisions Arts & Sciences and The National Academy of Television Arts & Sciences conspired with Sharp to deceive Goodman**

25. It was Sharp who initiated litigation with Goodman. Goodman was unaware of Sharp prior to the vexatious action Sharp brought against a fictitious corporate entity concocted by Sweigert to resemble the name of a real corporation to deceive Goodman into litigation.

26. The deception caused Goodman to believe the legal action might impact his real corporation and fooled him into responding by counsel. Sharp has not explained why upon learning of a video on YouTube channel titled "JASON GOODMAN" he decided to sue a corporation he had no obvious way of knowing even existed, let alone was associated with Goodman. A reasonable observer would be likely to conclude he was told by Sweigert.

RESPONSE IN OPPOSITION TO DEFENDANT ADAM SHARP'S MOTION TO DISMISS   5

27. Sharp has never explained how he came up with the identically named false corporate entity that Sweigert concocted or why he chose to sue that corporation rather than Goodman. A reasonable observer would be likely to conclude that Sharp cooperated with Sweigert in their shared goal to destroy Goodman's ability to broadcast on social media, and to obtain civil legal judgements that would prevent Goodman from publicly discussing these facts.

28. With regard to public action, Sharp is a corporate nonprofit bully who used IRS authorized tax-exempt funds to illegally further his political agenda. He demonstrates that he will stop at nothing, including defying the law and harming Goodman, to achieve his goals.

29. Not one of Goodman's well-founded claims related to Sharp's wrongdoing with regard to X Corp have been previously disproven. Sharp has relied on bullying, thuggery, and intimidation to block and stifle Goodman and deny him a legal defense. That occurred again outside 249 West 17th Street on November 1, 2022, while former FBI employee Baker remained at the helm of X Corp legal, actively working to block newsworthy information from the public.

30. Goodman's claims are not only well founded, but they have also been proven by sworn testimony of former X Corp employees and events subsequent to November 1, including Musk firing Baker specifically for withholding newsworthy information from the public.

### B. Claims in Goodman I were not frivolous but are not claims in this case

31. Defendant's motion to dismiss explains that claims in Goodman v Sharp were dismissed by Judge Valerie Caproni. Goodman alleges Sharp conspired with Caproni while she was FBI General counsel beginning in approximately 2010, and continues in an ongoing manner to violate every American's rights including Goodman's today. Those allegations are currently being reviewed on appeal, (*See Second Circuit Court of Appeals* Docket #: 23-7952).

RESPONSE IN OPPOSITION TO DEFENDANT ADAM SHARP'S MOTION TO DISMISS   6

32.     Goodman is not an attorney and may have failed to properly form a cognizable complaint, but the factual basis was well founded and supported by irrefutable evidence.  Sharp conspired with numerous individuals, defendants, and others, to deceive the public, abuse the law, and violate Goodman's rights and he does so in an ongoing and continuous manner.

33.     This instant action arises out of new wrongdoing by individuals involved in the same coalition that Goodman has tangled with in the past, but res judicata does not grant Sharp permission to abuse Goodman in perpetuity or obviate new legal action in response to new acts.

### C. Goodman does not seek to relitigate the same claims in Goodman II, this instant action concerns new claims against some of the same parties

34.     Goodman is not seeking to relitigate any previous claims.  Goodman did not even intend to address these claims in this action except for the fact that defendant has raised them.  Goodman is seeking to litigate new claims that Sharp coordinated with, motivated or incited others including X Corp employees who were employed there on November 1, 2022, when Goodman was attacked.  Sharp is a part of a very small group of people that knew Goodman was aware of FBI infiltration at X Corp and was working to prevent revealing that to the new owner or the public.  These are new allegations that have not been raised in any prior litigation.

### D. Goodman's actions against Sharp are meritorious and well founded

35.     Contrary to defendant's false claim, Goodman made no admission that he has no basis to sue Sharp.  Any such misinterpretation may be due to Goodman's non-attorney status.  To avoid making conclusory statements, more careful wording in this complaint sought to present the claims as allegations that will be proven at trial.  This may not have adhered to standards because Goodman remains untrained in law and inexperienced at litigation.  If defendant interpreted any such admission, it is a misinterpretation.

36. The specific ongoing misconduct alleged by Goodman and attributed to Sharp is that he knowingly and willfully assisted the FBI and other government agencies and employees in a years-long plan to infiltrate private sector social media companies and to impose the will of government upon the companies and their users specifically including Goodman.

37. On November 1, 2022, with Sharp's knowledge and in furtherance of his shared purpose to conceal the FBI's hidden relationship with X Corp, security employees acting under color of law with authority granted to them by the NYPD and FBI assaulted Goodman. This was done in the interest of former X Corp executives including Sharp or non-party former counsel Baker who were carrying out the orders and wishes of government agencies under color of law.

38. Even if Goodman's claims were improperly articulated in the operative complaint, the claims are factual and true and implicate the defendant.

39. Even if the Court agrees with defendant that Goodman's claims against Sharp are inadequately articulated in the complaint, Goodman should be granted permission to amend the complaint pursuant to FRCP rule 15 and in the interest of serving justice in this matter.

## ARGUEMENT

### A. Goodman's claims survive dismissal pursuant to Rule 12(b)(6)

40. Goodman not only alleges sufficient facts to state a plausible claim, that Sharp acted under color of law working with the FBI in violation of the first amendment to suppress information related to X Corp and Goodman rights, but the root of the much-maligned conspiracy theory has been proven by X Corp executive testimony.

41. Public domain evidence including a broadcast interview on CNBC supports plausible allegations that Sharp was directly involved in a media campaign at least throughout the 2020 presidential election in support of Twitter. Long after he left X Corp employment Sharp

appeared on behalf of X Corp as a spokesman or agent speaking about the Hunter Biden laptop New York Post story that Musk would ultimately fire Baker over.

42. Goodman's claims meet the Twombly plausibility standard because Sharp and X Corp had a mutual interest in preventing Goodman from revealing alleged wrongdoing at X Corp related to illegal interaction with the FBI during and after the 2020 Presidential election.

### B. Congress and the Supreme Court are considering similar claims

43. Goodman alleges that all X Corp employees acted under color of law because it has been testified to under oath in Congress that the FBI was providing regular directions, instructions, and even allegedly coercing X Corp during the time the events in question occurred.

44. By conspiring with the FBI since 2010 in an ongoing manner as Goodman alleges, he has, Sharp would be acting under color of law as a clandestine operative of the FBI.

45. The Supreme Court has yet to rule in Missouri v Biden. That case asks the same fundamental question Goodman asks here. If the FBI influences X Corp, did X Corp's employees, contractors, agents, and operatives act under color of law? Even if the decision ultimately is no, the question cannot be dismissed at this early stage in this case.

46. Sharp intends in an ongoing manner and intended on November 1, 2022, to deprive Goodman of his first amendment right to discuss FBI infiltration of X Corp with the company owner Musk or others. Goodman alleges Sharp acted under color of law and as part of a broad ongoing cooperation with the FBI that Sharp has engaged in since approximately 2010.

### C. Goodman should not be barred from filing anything regarding Sharp

47. Goodman should not be enjoined from filing anything or publicly discussing any facts relative to Sharp or these matters because Goodman's claims are well-found and backed by irrefutable evidence. It is Sharp who has relied on tricks, abusive litigation and sophisticated

strategies involving deceptions calculated to harm Goodman.  Any injunction reducing or impeding Goodman's rights to access the courts or the first amendment would be unjust.

## CONCLUSION

48. For the reasons stated herein this case should not be dismissed.  It should continue on to discovery, or Goodman should be granted leave to amend the complaint in addition to any other relief as determined by the Court.

Dated: New York, New York February 1, 2024

Respectfully submitted,

Jason Goodman
Pro Se Plaintiff
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-380-6998