IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK        23-cv-09648-JGLC-GWG
----------------------------------------------------------------------X
                    JASON GOODMAN,

                              Plaintiff,           **MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT**

              -against-

THE CITY OF NEW YORK and NEW YORK CITY           **ORAL ARGUMENT REQUESTED**
POLICE DEPARTMENT, NEW YORK CITY POLICE
DEPARTMENT LIEUTENANT GEORGE EBRAHIM,
NEW YORK CITY POLICE DEPARTMENT OFFICER
CHANDLER CASTRO, NEW YORK CITY POLICE
DEPARTMENT OFFICER JENNIFER CARUSO, NEW
YORK CITY POLICE DEPARTMENT OFFICER
KELVIN GARCIA, JOHN DOE 1, JOHN DOE 2, JOHN
DOE 3, JOHN DOE 4, JANE DOE, ELON MUSK, X
CORP, ADAM SHARP.
                              Defendants.
----------------------------------------------------------------------X

Plaintiff, Jason Goodman, ("Goodman") by and for himself pro se, respectfully requests the Court issue an order finding defendant Adam Sharp, ("Sharp") and non-party David George Sweigert, ("Sweigert") in contempt of Court pursuant to 18 U.S. Code § 401(1) and (3) and for the reasons set forth below;

## INTRODUCTION

1. Defendant Sharp is the CEO of the National Academy of Television Arts and Sciences, ("NATAS") and previously was an executive at defendant X Corp where he served as Twitter's first ever U.S. Government liaison and created the first Whitehouse Twitter Townhall.

2. Nonparty Sweigert is a retired U.S. Airforce radio and information technology specialist and a professional hacker who has authored books about penetrating secure systems and engaging in social engineering (deception) tactics to gain access to secure systems. Sweigert is believed to be mentally ill because he is obsessed with stalking, harassing, and bringing multiple vexatious legal actions against Goodman across a wide range of U.S. District Courts.

3. Approximately seven years ago, after observing Goodman on YouTube but having never met him, Sweigert announced plans to sue Goodman for the rest of his life. He has been obsessively fulfilling that promise with continuous vexatious lawsuits since that time.

4. Sweigert maniacally monitors and catalogs everything Goodman publishes on his daily broadcasts and attempts to find some new way to create new legal action against Goodman. Sweigert is in a regular practice of seeking out parody images created by Goodman and contacting the copyright holder to encourage legal action purely to harm Goodman. Sweigert is not an attorney and not offering to represent the parties, just ginning up litigation. **(EXHIBIT A)**

5. In or around June 2020, Sweigert observed a parody image created by Goodman that lampooned the EMMY statue, a trademark held by the nonprofit corporation Sharp is the CEO of. Goodman alleges Sweigert contacted Sharp and encouraged him to sue a false Corporate entity Sweigert named with the intention of deceiving Goodman to resemble the name of a real corporation previously owned by Goodman.

6. Goodman previously owned a corporation named Multimedia System Design, Ine., ("MSD"). At Sweigert's instruction, Sharp sued Multimedia System Design Inc., D/B/A/ Crowdsource the Truth., ("MSDI") a fictional entity that does not exist. Goodman was concerned that MSDI would be misconstrued for MSD and he could be faced with legal or financial liabilities and so, in good faith, Goodman hired an attorney and appeared in the action.

7. Sweigert was not a party to that case either but he was allowed by Judge Valerie Caproni to interfere so aggressively that he compelled the withdrawal of Goodman's attorney resulting in a default judgment. Even though the attorney cited Sweigert's harassment in his withdrawal, and even though Judge Caproni presided over another concurrent case in which Sweigert was the plaintiff, she took no action to curtail or punish this egregious behavior.

MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT                    2

8. Sweigert must not be allowed to interfere in this case as he has previously. He has already been admonished not to file and has repeatedly defied this Court's orders.

## ARGUMENT

9. It is well established that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (internal quotation marks omitted); see also 18 U.S.C. § 401 (authorizing courts "to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . as . . . [d]isobedienceor resistance to its lawful writ, process, order, rule, decree, or command"). "The purpose of civil contempt, broadly stated, is to compel a reluctant party to do what a court requires of [it]." *Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986). "Because a contempt order is a severe sanction, it is subject to the higher 'clear and convincing' evidence standard rather than the usual preponderance of the evidence standard applicable to other civil cases." *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. 2001) (collecting cases). Thus, a court may hold a party or a non-party in civil contempt for failing to comply with a court order where: "(1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation marks omitted)

### 1. Clear and Unambiguous Order

10. "[A] federal court [must] frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Drywall Tapers & Pointers of Greater N.Y., Local* 1974 of *I.B.P.A.T AFL-CIO v. Local 530 of Operatives Plasterers &*

*Cement Masons Int'l Ass'n,* 889 F.2d 389, 400 (2d Cir. 1989) (internal quotation marks and citation omitted). "Thus, the first element—that the order be 'clear and [un]ambiguous'—requires that the order 'be specific in terms' and that it 'shall describe in reasonable detail . . . the act or acts sought to be restrained.'" *Yurman Studio, Inc. v. Castaneda*, Nos. 07 Civ. 1241, 07 Civ.7862 (SAS), 2009 WL 454275, at *2 (S.D.N.Y. Feb. 23, 2009) (quoting Drywall Tapers, 889 F.2d at 400).

11. On November 21, 2023, the Court issued a clear and unambiguous order in the form of a memorandum endorsement in response to nonparty Sweigert's motion to intervene which stated, "Application DENIED. Case law holds that a reputational interest in a litigation as is suggested in this letter is insufficient to justify intervention. See, e.g., *A.S. v. City Sch. Dist. of Albany*, 2021 WL 4198411, at *6 (N.D.N.Y. Aug. 11, 2021). The other interests claimed are also insufficient to justify either permissive intervention or intervention as of right under Fed. R. Civ. P. 24." (Dkt. 8)

**2. Clear and Convincing Evidence of Non-Compliance**

12. On February 18, 2024, Sweigert sought reconsideration of essentially the same reputational interest claims he has already unambiguously been ordered not to file. This case has nothing to do with Sweigert's alleged employment or videos allegedly made about Sweigert.

13. On February 26, 2024, Sweigert had the audacity to defy this Court's order again, making another purely scurrilous filing in bold defiance of the Court's unambiguous order.

14. Goodman has never used or even heard of the ridiculous term "Satan Bug" and Sweigert will fail to produce any recorded or written statement made by Goodman prior to this instant filing that includes that made up nonsense word.

15. Contrary to Sweigert's defamatory claims, Goodman is not grooming any audience. He is a normal documentarian and podcast host who earns a living producing investigative journalism, education and entertainment broadcasts on the internet.

16. Sweigert's filings and their bizarre content only serve to prove Goodman's allegations that Sweigert is a mentally ill cyber stalker who is maniacally obsessed with repeatedly ginning up legal action against Goodman and he must be stopped.

17. Sweigert attempts to mask his harassment behind F.R.C.P. Rule 60(d), but even if the Court considers his insane made up fantasies to be "new evidence" it would only be new evidence in support of the same form of reputational interest claim Sweigert has already been unambiguously ordered not to file.

### 3. Diligence

18. "Reasonable diligence, at the very least, requires a party [or non-party] to develop reasonably effective methods of compliance." *Zino Davidoff SA v. CVS Corp.*, No. 06 Civ. 15332 (RJS), 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008); see, e.g., *Cancer Research Inst., Inc. v. Cancer Research Soc'y, Inc.,* 744 F. Supp. 526, 530 (S.D.N.Y. 1990). "Although the Second Circuit has not been squarely confronted with the question of what constitutes 'reasonable diligence,' it has noted that 'substantial compliance' is the appropriate standard in evaluating noncompliance in a contempt case." Yurman Studio, 2009 WL 454275, at *2 (citations omitted).

19. As of February 18, 2024 Sweigert began demonstrating that he is not complying with the Court's orders and reiterated his intention not to comply on February 26, 2024. Based on these filings and his overall filing history, it is reasonable to presume Sweigert will continue to file unless the Court employs more stringent enforcement measures.

## CONCLUSION

20.     The facts in this case demonstrate that (1) Sweigert has failed to comply with the Court's clear and unambiguous November 22, 2023 order, (2) the proof of non-compliance is clear and convincing, and (3) Sweigert has not diligently attempted to comply in a reasonable manner.  Accordingly, the Court should find Sweigert in contempt of court and apply the appropriate sanctions.

Dated: New York, New York February 28, 2024

Respectfully submitted,

Jason Goodman
Pro Se Plaintiff
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-380-6998

**EXHIBIT A**

# United States of America
### United States Patent and Trademark Office



**Reg. No. 7,070,501**

**Registered Jun. 06, 2023**

**Int. Cl.: 9, 14, 16, 18, 24, 25, 28, 30, 41**

**Service Mark**

**Trademark**

**Principal Register**

Nintendo of America Inc. (WASHINGTON Corporation)
4600 150th Avenue NE
Redmond WA 98052
UNITED STATES

CLASS 9: Recorded electronic game programs; downloadable electronic game programs; recorded video game programs; downloadable video game programs; video game cartridges; memory cards for video game machines; cases for smartphones; covers for smartphones; recorded computer game software; downloadable computer game software for use on mobile and cellular phones; downloadable image files containing artwork, text, audio, videos relating to video games; downloadable music files; downloadable electronic publications, namely, fiction stories, booklets, manuals and newsletters in the field of video games; headphones; earphones; batteries

CLASS 14: Key rings; key chains comprised of split rings with decorative fobs or trinkets; charms for key rings; jewelry boxes; commemorative coins; collectible coins; jewelry; necklaces; bracelets; jewelry charms; earrings; tie pins; rings (jewelry); medals; ornamental lapel pins; shoe jewelry; watches; clocks; watch bands

CLASS 16: Office requisites, namely, binders and folders; wrapping paper; paper bags and sacks; place mats of paper; coasters of paper; table napkins of paper; tablecloths of paper; paper; stationery; notebooks; pen cases; paint boxes for use in schools; writing implements; pens; pencils; pen cases; rubber erasers; pencil sharpeners, electric or non-electric; postcards; greeting cards; stickers; wall decals; printed matter, namely, calendars, children's activities books, magazines and manuals in the field of video games; books in the field of children's entertainment, fiction stories, and video games; comic books; posters; paintings; photograph stands; paper party decorations

CLASS 18: Clothing for pets; collars for animals; bags, namely, book bags, carry-on bags, shoulder bags, handbags, backpacks, drawstring pouches, travel bags, and luggage; school bags; rucksacks; suitcases; credit card cases; purses; wallets; key cases; luggage tags; garment bags for travel; bags for sports; vanity cases, not fitted; umbrellas

CLASS 24: Fabrics for textile use; adhesive fabric for application by heat; towels of textile; handkerchiefs of textile; quilts; children's blankets; bed blankets; picnic blankets; throws; fleece blankets; travelling rugs; lap robes; covers for cushions;



*Katherine Kelly Vidal*
Director of the United States
Patent and Trademark Office



pillowcases; bed linen; tablemats of textile; table napkins of textile; place mats of textile; coasters of textile; flags of textile or plastic; banners of textile or plastic; blankets for household pets; wall hangings of textile; unfitted fabric furniture covers; bed covers; curtains of textile or plastic; household linen; sleeping bags

CLASS 25: Clothing, namely, polo shirts, sweatshirts, parkas, jackets, raincoats, pants, dresses, sweatpants, skirts, and sweaters; shirts; tee-shirts; pajamas; underwear; bathing suits; socks; scarves; neck scarves; ear muffs; gloves; bibs not of paper; hats; caps being headwear; cap peaks; belts for clothing; footwear; sports shoes; sandals; slippers; masquerade costumes; Halloween costumes

CLASS 28: Games, namely, card games, promotional game cards, puzzles, trading card games; toys, namely, toy balls, toy key chains, toy figures, water toys, plush toys, inflatable toys, party favors in the nature of small toys, toy balloons, toy building blocks, toy vehicle; ride-on toys; ride-on toys and accessories therefor; stuffed toys; dolls; portable games with liquid crystal displays; protective films adapted for screens for portable games; video game machines; controllers for game consoles; hand-held units for playing video games; arcade video game machines; board games; playing cards; ornaments for Christmas trees, except lights, candles and confectionery; protective carrying cases specially adapted for handheld video games

CLASS 30: Tea; tea-based beverages; coffee; coffee-based beverages; cocoa; cocoa-based beverages; pastries; candies; ice cream; cookies; chocolate; popcorn; chewing gum; bread and buns; sandwiches; pizzas; pies; cakes; pancakes; frozen yogurt; crackers; mints for breath freshening; seasonings; ketchup; dressings for salad; cereal preparations, namely, oatmeal, corn flakes, breakfast cereals, cereal-based snack foods, and cereal bars; noodles; pasta; pasta sauce; rice

CLASS 41: Entertainment services, namely, providing non-downloadable images featuring images of characters and scenes from an electronic game via a global computer network and wireless networks; entertainment services, namely, providing non-downloadable prerecorded music and sounds in the field of video games, all on-line via a global computer network; entertainment services, namely, providing temporary use of non-downloadable video games; entertainment services, namely, providing online electronic games; providing information in the field of entertainment; providing non-downloadable online electronic publications, namely, online journals and interactive online blogs featuring user generated or specified content in the field of video games and online publications in the nature of e-books in the field of video games; providing on-line videos featuring video games, not downloadable; providing online music, not downloadable; presentation of live show performances; presentation of musical performances; arranging and conducting of concerts; organization and arrangement of video game events for entertainment purposes; organization and arrangement of entertainment shows and events; providing on-line computer games; organization of electronic game competitions for entertainment purposes; providing amusement arcade services

PRIORITY DATE OF 02-18-2021 IS CLAIMED

OWNER OF INTERNATIONAL REGISTRATION 1594401A DATED 03-10-2021, EXPIRES 03-10-2031

SER. NO. 79-312,295, FILED 03-10-2021

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:** Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http://www.uspto.gov.

**NOTE:** A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms **available at** http://www.uspto.gov.









https://www.youtube.com/@crowdsourcethetruth8954/search?query=mario





















