IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK    23-cv-09648-JGLC-GWG
------------------------------------------------------------------X

                JASON GOODMAN,

                              Plaintiff,

           -against-

THE CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY POLICE DEPARTMENT LIEUTENANT GEORGE EBRAHIM, NEW YORK CITY POLICE DEPARTMENT OFFICER CHANDLER CASTRO, NEW YORK CITY POLICE DEPARTMENT OFFICER JENNIFER CARUSO, NEW YORK CITY POLICE DEPARTMENT OFFICER KELVIN GARCIA, JOHN DOE 1, JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, JANE DOE, ELON MUSK, X CORP, ADAM SHARP.

                              Defendants.
------------------------------------------------------------------X

**MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT**

**ORAL ARGUMENT REQUESTED**

    Plaintiff, Jason Goodman, ("Goodman") by and for himself pro se, respectfully requests the Court issue an order finding defendant Adam Sharp, ("Sharp") and non-party David George Sweigert, ("Sweigert") in contempt of Court pursuant to FRCP Rule 70 and the Court's inherent authority and ordering parties and nonparties to cease extrajudicial interference in this case.

    Goodman states, under penalty of perjury with respect to himself and his own actions and alleges upon information and belief with regard to all other parties, the following;

### INTRODUCTION

    1.    Defendant Sharp is the CEO of the National Academy of Television Arts and Sciences ("NATAS") and a former X Corp executive. Sharp has not denied his fifteen-year long relationship with Judge Valerie Caproni or his history of clandestine collaboration with Sweigert.

    2.    Non-party Sweigert is a professional hacker and an obsessed cyber stalker who has been harassing Goodman daily for the past seven years. Sweigert is pathologically unable to follow Court orders, the rules, or the law. In 2020, Sweigert secretly collaborated with Sharp to

MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT            1

sue a false corporate entity as part of a complex scheme calculated to financially harm Goodman, destroy his career, and prevent him from broadcasting facts that were unfavorable to Sharp.

3. Sharp utilizes Sweigert as an apparatchik to violate Goodman's rights, the rules, and the law. Together, they collaborate in forming complex hoaxes and sham litigation, inter alia, calculated to destroy Goodman's access to social media and his ability to earn income.

4. Sweigert is a computer hacker who monitors Goodman via social media and other means. Sweigert monitors the courts, the internet and even Goodman's private email with malicious software that tracked Goodman's behavior without Goodman's knowledge or consent.

5. On or about February 29, 2024, Sweigert sent a letter to counsel for the City of New York, Mary Jane Anderson, ("Anderson") claiming to be a request for information about Goodman, in which Sweigert refers to Goodman as a "f------g Jew" twice. **(EXHIBIT A)**

6. Sweigert has no legitimate interest in this case and no legitimate reason to contact Anderson apart from harassment and improperly interfering with the outcome of this case.

7. Sweigert's sole purpose in contacting Anderson was to intimidate Goodman and disrupt this case by harassing parties with the intent to improperly affect the outcome of the case.

8. This matches a pattern established by Sharp and Sweigert in previous litigation, (*See National Academy of Television Arts and Sciences, Inc., v Multimedia System Design, Inc., D/B/A Crowdsource the Truth* 1:20-cv-07269-VEC-OTW Dkt. 102-2.) ("NATAS v MSDI")

9. Sweigert was also a nonparty in NATAS v MSDI and he also harassed and cyber stalked an attorney in that case compelling withdrawal and a default judgement in Sharp's favor.

10. Goodman is not attempting to relitigate the facts of NATAS v MSDI, but the background information is critical to understanding the relationship between Sharp and Sweigert.

11. No party may be allowed to inappropriately interfere with this case or parties to it.

MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT                                              2

12. Sharp's motion to dismiss this instant action should not be considered before he and Sweigert appear at a hearing and explain the nature of their relationship under oath.

13. Sweigert's pattern and practice of outrageous behavior must be curtailed. No party can be permitted to interfere in litigation in the way he has. The Court must take action, or else forfeit its authority to the deceptions of troublemakers with no respect for the rules or law.

## BACKGROUND

14. More than one year ago, directly following the assault that gave rise to this action, Sweigert made numerous Freedom of Information Law, ("FOIL") requests to NYPD entities.

15. On November 18, 2022, Sweigert sent Goodman an email indicating the NYPD Legal Department would send him police records related to FOIL requests. **(EXHIBIT B)**

16. Only two days after this instant action appeared on the docket, nonparty Sweigert began moving improperly in the case. On November 4, 2023, he filed a scurrilous and irrelevant notice which he falsely declared pertained to a pre-filing order from Judge Caproni, (Dkt. 2).

17. No such prefiling order had ever been issued or existed against Goodman and Sweigert had no legitimate interest in this case or any alleged orders pertaining to Goodman.

18. Non-party Sweigert simultaneously filed a false and scurrilous notice in NATAS v MSDI, where he is also a non-party, alerting Judge Caprnoi, who confirmed his allegations were false, but increased the restrictions of her unconstitutional and now expired order. **(EXHIBIT C)**

19. On November 21, 2023, this Court issued a memo endorsement, (Dkt. 8) denying Sweigert intervention and stating, "reputational interest [is] insufficient to justify intervention."

20. On February 18, 2024, Sweigert made a duplicative filing seeking reconsideration for intervention, (Dkt. 54 and 55) which he mistakenly filed as the plaintiff, (Dkt. 54-1).

21. Sweigert's motion absurdly declared Goodman resides in a penthouse apartment, mocking the Court with a facially ridiculous filling including jokes and jabs at Goodman.

22. On February 26, 2024, prior to receiving a response from the Court, Sweigert made another filing, (Dkt 58) relying upon supplemental authority in which he defended Sharp.

23. On February 29, 2024, despite having been denied intervention previously, and not yet having received a response from the Court on the motion for reconsideration, Sweigert sent a letter to Anderson. This contact should be construed as moving in the case with the intent to affect the outcome against the standing order that denied intervention on November 21, 2023.

24. On March 1, 2024, the Court issued an Order denying Sweigert's motion for reconsideration and Goodman's motion for contempt, on the appropriate basis that a motion for reconsideration of the ruling could not violate the original November 21, 2023 order, (Dkt. 64).

## ARGUMENT

25. "The aim of civil contempt is to vindicate a party's right to the benefits of a judicial mandate or to compensate that party for the interference by the contemnor" (Matter of *Banks v Stanford,* 159 AD3d 134, 140, 71 N.Y.S.3d 515; *see Matter of McCormick v Axelrod*, 59 NY2d 574, 583, amended 60 NY2d 652). To support a finding of civil contempt, first, there must be a lawful order of the court in effect clearly expressing an unequivocal mandate. Second, it must appear with reasonable certainty that the order has been disobeyed. Third, the party to be held in contempt must have had knowledge of the court's order. Fourth, the violation of the court's order must be shown to impede, impair, or prejudice the rights of another party (*see Matter of McCormick v Axelrod*, 59 NY2d at 583; *Matter of Banks v Stanford*, 159 AD3d at 140; see also Judiciary Law § 753[A][3]; *El-Dehdan v El-Dehdan*, 26 NY3d 19, 29, 19 N.Y.S.3d 475, 41 N.E.3d 340; *McCain v Dinkins*, 84 NY2d 216, 226, 639 N.E.2d 1132, 616 N.Y.S.2d 335).

"Once the movant makes the required showing, the burden shifts to the alleged contemnor to refute that showing, or to offer evidence of a defense such as an inability to comply with the order" (*Matter of Mendoza-Pautrat v Razdan*, 160 AD3d 963, 964, 74 N.Y.S.3d 626; see *El-Dehdan v El-Dehdan*, 26 NY3d at 35). "'A motion to punish a party for civil contempt is addressed to the sound discretion of the court, and the movant bears the burden of proving the contempt by clear and convincing evidence'" (*Louzoun v Montalto*, 162 AD3d 1004, 1005, 80 N.Y.S.3d 154, quoting *Savel v Savel*, 153 AD3d 872, 873, 61 N.Y.S.3d 97).

*Matter of Slade v. Stanford*, 2023 NY Slip Op 00097, ¶ 1, 212 A.D.3d 636, 637, 181 N.Y.S.3d 333, 334 (App. Div. 2nd Dept.)

### 1. Lawful Order Expressing Unambiguous Mandate

26. On November 21, 2023, the Court issued a clear and unambiguous memorandum endorsement denying Sweigert's motion to intervene. (Dkt. 8)

27. FRCP Rule 11 disallows any movant from filing anything for, "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."

### 2. It Appears with Reasonable Certainty that the Order has been Disobeyed

28. On February 29, 2024, Sweigert sent a letter to Anderson seeking information about Goodman. Because he contacted Anderson only after he learned that she represents the City of New York in this case, it should be construed as moving in this case.

29. Sweigert had no legitimate FOIL request or other proper purpose for contacting Anderson and only did so after he learned she was counsel to defendants in this case.

### 3. Knowledge of the Court's Order is Clear

30. It is inarguable to declare that Sweigert had knowledge of the Court's order because he filed two letter motions seeking reconsideration of that order on February 18, 2024.

31. Sweigert has knowledge of the NYPD FOIL system and knew or reasonably should have known that Anderson was not responsible for fulfilling NYPD FOIL requests.

### 4. This Violation Inherently Impedes Goodman's Right to a Fair Trial

32. Sweigert has previously harassed an attorney involved in litigation with Goodman to the benefit of Sharp and he cannot be allowed to do so again. (*See National Academy of Television Arts and Sciences, Inc., v Multimedia System Design, Inc., D/B/A Crowdsource the Truth* 1:20-cv-07269-VEC-OTW Document 102-2)

33. Sweigert deliberately defies this and other Court's orders consitently, and he did so in this instance by attempting to move in this case and interact with the parties for an improper purpose. Sweigert demonstrates no diligence whatsoever and makes no effort to comply with the Federal Rules of Civil Procedure, the Court's orders, or the law.

### CONCLUSION

34. The facts in this case demonstrate that (1) Sharp and Sweigert have failed to comply with clear and unambiguous Court orders, (2) the proof of non-compliance is clear and convincing, and (3) Sweigert has not diligently attempted to comply in a reasonable manner. Accordingly, the Court should find Sweigert in contempt of court and apply sanctions. Additionally the Court should not consider Sharp's motion to dismiss prior to an oral arguments hearing at which Sharp and Sweigert should be compelled to answer these questions under oath.

Dated: New York, New York March 11, 2024

Respectfully submitted,

Jason Goodman
Pro Se Plaintiff
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-380-6998