23 Civ. 09648 (JGLC) (GWG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON GOODMAN,

                                        Plaintiff,

                -against-

THE CITY OF NEW YORK, ET AL.,

                                        Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS THE CITY OF NEW YORK, NYPD LIEUTENANT EBRAHIM, OFFICERS CASTRO, CARUSO, AND GARCIA'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

*HON. SYLVIA O. HINDS-RADIX*
Corporation Counsel of the City of New York
*Attorney for Defendants City of New York,*
*Ebrahim, Castro, Caruso, and Garcia*
100 Church Street
New York, New York 10007

Of Counsel: Mary Jane Anderson
Tel: (212) 356-2415

March 26, 2024

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ....................................................................................................... 1

STANDARD OF REVIEW ....................................................................................................... 4

ARGUMENT

        POINT I

                PLAINTIFF FAILS TO STATE A CLAIM FOR
                UNLAWFUL DETENTION ....................................................................... 6

        POINT II

                PLAINTIFF FAILS TO STATE A
                SUBSTANTIVE DUE PROCESS CLAIM ............................................... 10

        POINT III

                PLAINTIFF FAILS TO ALLEGE THAT THE
                CITY DEFENDANTS WERE PERSONALLY
                INVOLVED IN ANY DUE PROCESS
                VIOLATIONS CLAIMS OR IN ANY
                EXCESSIVE FORCE CLAIMS ............................................................... 11

        POINT IV

                PLAINTIFF'S FIRST AMENDMENT
                RETALIATION CLAIM FAILS ............................................................... 12

        POINT V

                PLAINTIFF'S CONSPIRACY CLAIM FAILS ...................................... 13

        POINT VI

                PLAINTIFF'S STATE LAW CLAIM OF
                INTENTIONAL INFLICTION OF EMOTIONAL
                DISTRESS SHOULD BE DISMISSED .................................................... 14

**Page**

POINT VII

ANY MUNICIPAL LIBAILITY CLAIM THAT
PLAINTIFF IS PURPORTING TO MAKE IN THE
INSTANT MOTION FAILS ................................................................... 16

POINT VIII

PLAITIFF'S MALICIOUS PROSECUTION
CLAIM FAILS ........................................................................................ 18

POINT IX

THE COURT SHOULD DECLINE TO
EXERCISE JURISDICTION OVER PLAINTIFF'S
STATE LAW CLAIMS, AND IN ANY EVENT,
PLAINTIFF FAILS TO PLEAD COMPLIANCE
WITH THE GENERAL MUNICIPAL LAW ......................................... 19

CONCLUSION ..................................................................................................... 20

**TABLE OF AUTHORITIES**

**Cases**                                                                **Pages**

ADA v. Cigna Corp.,
   605 F.3d 1283 (11th Cir. 2010) ................................................................5

In re Aluminum Warehousing Antitrust Litig.,
   833 F.3d 151 (2d Cir. 2016)...................................................................4

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...............................................................4, 5, 11

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)...............................................................4

Biswas v. City of New York,
   973 F. Supp. 2d 504 (S.D.N.Y. 2013) ................................................13

Burg v. Gosselin,
   591 F.3d 95 (2d Cir. 2010)...................................................................19

Burlew v. American Mutual Ins. Co.,
   63 N.Y.2d 412 (N.Y. 1984) ................................................16

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002)...................................................................5

Chepilko v. Bushuyev,
   14 Civ. 6732 (GBD)(GWG), 2016 U.S. Dist. LEXIS 150530
   (S.D.N.Y. Oct. 28, 2016) ................................................7

Connell v. Signoracci,
   153 F.3d 74 (2d Cir. 1998)...................................................................12

Corsini v. Brodsky,
   731 F. App'x 15 (2d Cir. 2018) ................................................7

Cuevas v. City of New York,
   07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984
   (S.D.N.Y. Dec. 7, 2009)...................................................................18

Curley v. Village of Suffern,
   268 F.3d 65 (2d Cir. 2001)...................................................................12, 13

Devenpeck v. Alford,
   543 U.S. 146 (2004)...................................................................7, 8

**Cases**                                                                                          **Pages**

Dwares v. City of New York,
    985 F.2d 94 (2d Cir. 1993)......................................................................17, 18

EEOC v. Die Fliedermaus, L.L.C.,
    77 F. Supp. 2d 460 (S.D.N.Y. 1999) ...........................................................16

In re Elevator Antitrust Litig.,
    502 F.3d 47 (2d Cir. 2007)..............................................................................4

Fertig v. HRA Med. Assistance Program,
    10 CV 8191 (RPP), 2011 U.S. Dist. LEXIS 48789
    (S.D.N.Y. May 6, 2011)...................................................................................5

Fischer v. Maloney,
    43 N.Y.2d 553 (N.Y. 1978) ....................................................................15, 16

Freihofer v. Hearst Corp.,
    65 N.Y.2d 143 (N.Y. 1985) ..........................................................................16

Gaston v. Coughlin,
    249 F.3d 156 (2d Cir. 2001)..........................................................................11

Hansel v. Sheridan,
    991 F. Supp. 69 (N.D.N.Y. 1998).................................................................16

Hawthorne v. County of Putnam,
    492 F. Supp. 3d 281 (S.D.N.Y. 2020) ..........................................................19

Horsley v. Feldt,
    304 F.3d 1125 (11th Cir. 2002) ......................................................................5

Howell v. New York Post Co.,
    81 N.Y.2d 115 (N.Y. 1993) ....................................................................15, 16

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,
    62 F.3d 69 (2d Cir. 1995)................................................................................6

Jackson v. City of New York,
    29 F. Supp. 3d 161 (E.D.N.Y. 2014) ..............................................................6

Jackson v. Ramirez,
    1:15-cv-617-GHW, 2016 U.S. Dist. LEXIS 21619
    (S.D.N.Y. Feb. 22, 2016)................................................................................7

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006)........................................................................7-8

**Cases**                                                       **Pages**

King v. New York City Emps. Ret. Sys.,
   212 F. Supp. 3d 401 (E.D.N.Y. 2016) .................................................................10

Lanza v. Merrill Lynch & Co.,
   154 F.3d 56 (2d Cir. 1998) ................................................................................19

Little v. City of New York,
   487 F. Supp. 2d 426 (S.D.N.Y. 2007) .................................................................6

Lockwood v. Town of Hempstead,
   CV 16-3756 (SJF)(AYS), 2017 U.S. Dist. LEXIS 27339
   (E.D.N.Y. Feb. 24, 2017) ..................................................................................17

Maxcess, Inc. v. Lucent Techs., Inc.,
   433 F.3d 1337 (11th Cir. 2005) ..........................................................................5

McDaniel v. City of New York,
   585 F. Supp. 3d 503
   (S.D.N.Y. Feb. 15, 2022) ..................................................................................14

McDowell v. Gonzalez,
   424 F. Supp. 3d 1214 (S.D. Fla. 2019) ...............................................................5

McEachin v. McGuinnis,
   357 F.3d 197 (2d Cir. 2004).............................................................................4-5

McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.,
   256 A.D.2d 269 (1st Dep't 1998) .....................................................................16

Monell v. Dep't of Soc. Serv.,
   436 U.S. 658 (1978)......................................................................................16, 17

Moore v. City of New York,
   219 F. Supp. 2d 335 (E.D.N.Y. 2002) ..............................................................16

Moran v. Town of Greenwich,
   3:19-cv-00722 (VAB), 2021 U.S. Dist. LEXIS 152604
   (D. Conn. Aug. 13, 2021) ...................................................................................5

Morgan v. United Fed. of Teachers,
   1:23-cv-00697 (LAK)(SDA), 2023 U.S. Dist. LEXIS 99543
   (S.D.N.Y. June 7, 2023)....................................................................................10

Murchison-Allman v. City of New York,
   1:14-cv-2160 (ALC), 2016 U.S. Dist. LEXIS 44717
   (S.D.N.Y. Mar. 31, 2016) ...................................................................................7

**<u>Cases</u>**                                                                                                          **<u>Pages</u>**

<u>Murphy v. American Home Products Corp.</u>,
　　58 N.Y.2d 293 (N.Y. 1983) ........................................................................15, 16

<u>Murphy v. Lynn</u>,
　　118 F.3d 938 (2d Cir. 1997)...............................................................................18

<u>Natoli v. City of Kingston</u>,
　　600 N.Y.S.2d 780 (App. Div. 1993) ..................................................................15

<u>Panetta v. Crowley</u>,
　　460 F.3d 388 (2d Cir. 2006)............................................................................ 9-10

<u>Pangburn v. Culbertson</u>,
　　200 F.3d 65 (2d Cir. 1999)................................................................................13

<u>People v. Tichenor</u>,
　　89 N.Y.2d (N.Y. 1997) .........................................................................................8

<u>People v. Weaver</u>,
　　16 N.Y.3d 123 (N.Y. 2011) .................................................................................8

<u>Ricciuti v. New York City Transit Auth.</u>,
　　941 F.2d 119 (2d Cir. 1991)...............................................................................17

<u>Richard L. v. Armon</u>,
　　536 N.Y.S.2d 1014 (App. Div. 1989) ................................................................15

<u>Roberts v. Babkiewicz</u>,
　　582 F.3d 418 (2d Cir. 2009)..................................................................................5

<u>Rohman v. New York City Transit Auth.</u>,
　　215 F.3d 208, 215 (2d Cir. 2000).......................................................................18

<u>Russell v. Meat Farms, Inc.</u>,
　　160 A.D.2d 987 (2d Dep't 1990) ........................................................................15

<u>Russo v. City of Bridgeport</u>,
　　479 F.3d 196 (2d Cir. 2007)...............................................................................6

<u>Sadallah v. City of Utica</u>,
　　383 F.3d 34 (2d Cir. 2004)................................................................................12

<u>Singer v. Fulton County Sheriff</u>,
　　63 F.3d 110 (2d Cir. 1995)................................................................................19

**Cases**                                                                                                          **Pages**

Spagnola v. Chubb Corp.,
   574 F.3d 64 (2d Cir. 2009)..................................................................................4

Tangreti v. Bachmann,
   983 F.3d 609 (2d Cir. 2020)...............................................................................11

Taylor v. Microgenics Corp.,
   21 CV 6452 (VB), 2023 U.S. Dist. LEXIS 22561
   (S.D.N.Y. Feb. 9, 2023) ....................................................................................11

United Mine Workers v. Gibbs,
   383 U.S. 715 (1966)..........................................................................................19

Vippolis v. Village of Haverstraw,
   768 F.2d 40 (2d Cir. 1985),
   cert. denied, 480 U.S. 916 (1987)......................................................................17

Wahhab v. City of New York,
   386 F. Supp. 2d 277 (S.D.N.Y. 2005) ..............................................................10

Wahlstrom v. Metro-North Commuter R.R.,
   89 F. Supp. 2d 506 (S.D.N.Y. 2000) ................................................................15

Washington v. County of Rockland,
   373 F.3d 310 (2d Cir. 2004)..............................................................................19

Wieder v. City of New York,
   569 F. App'x 28 (2d Cir. 2014) ...........................................................................9

Wilchombe v. TeeVee Toons, Inc.,
   555 F.3d 949 (11th Cir. 2009) .............................................................................5

Zahra v. Town of Southhold,
   48 F.3d 674 (2d Cir. 1995).................................................................................16

Zherka v. Amicone,
   634 F.3d 642 (2d Cir. 2011)...............................................................................12

Zilioli v. City of New York,
   17cv9495, 2020 U.S. Dist. LEXIS 57704
   (S.D.N.Y. Apr. 1, 2020) ....................................................................................13

**Statutes**

42 U.S.C. § 1983...................................................................1, 6, 11, 13, 14, 16, 17, 18

**Statues**                                                                            **Pages**

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 4

Local Civ. Rule 7.2 ............................................................................................5

N.Y. Penal Law § 240.20(1) ..............................................................................8

N.Y. Penal Law § 240.20(2) ..............................................................................8

N.Y. Penal Law § 240.20(3) ..............................................................................8

N.Y. Penal Law § 240.20(7) ..............................................................................7

## PRELIMINARY STATEMENT

Jason Goodman ("Plaintiff") commenced this action on October 31, 2023, pursuant to 42 U.S.C. § 1983. (ECF No. 1). Plaintiff lists a litany of claims, including claims for excessive force, negligence, assault, battery, official misconduct, harassment, defamation, slander, libel, malicious prosecution, abuse of authority/power/position, gross deviation from proper procedures, false imprisonment, unlawful discrimination, and what appears to be a municipal liability claim both under <u>Monell</u> and *respondeat superior* theories of liability. On pages 27 through 31 however, Plaintiff lists four causes of action: unlawful detention, violations of due process, excessive force, and first amendment retaliation. Defendants address those four claims, in addition to the other claims that Plaintiff appears to assert against the City Defendants.

City Defendants respectfully submit this Memorandum of Law in support of their fully dispositive motion to dismiss all of the Plaintiffs' claims against them, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (1) Plaintiff fails to state a claim for unlawful detention; (2) Plaintiff fails to state a substantive due process claim; (3) Plaintiff fails to allege that the City Defendants were involved in any substantive due process rights or any excessive force; (4) Plaintiff fails to state a claim for first amendment retaliation; (5) Plaintiff fails to assert a claim for intentional infliction of emotional distress; (5) Plaintiff fails to state a municipal liability claim; and (6) Plaintiff fails to state a conspiracy claim.[1]

## STATEMENT OF FACTS

Plaintiff, a "documentarian, journalist, and talk show host," arrived in front of X Corporation's headquarters on October 31, 2022 "upon reading news that [Elon] Musk would fire most X Corp. employees," [and] "decided to do a livestream video broadcast standing

---

[1] To the extent that the Court construes additional claims against the City Defendants, the City Defendants respectfully request that they be afforded an opportunity to analyze those claims and potentially also move to dismiss those claims.

outside X Corp.'s New York headquarters at 249 West 17th Street New York, NY." (Compl. p. 4 ¶ 11, p. 10 ¶ 31).  That day, Plaintiff was involved in an altercation with an individual identified by Plaintiff as, "John Doe 3." (See Compl. p. 11 at ¶ 35).  According to Plaintiff, John Doe 3, John Doe 2, and Jane Doe 4 expressed that they had a right to privacy, did not wish to be recorded, and asked Mr. Goodman to leave. (See id.)  When Plaintiff refused, they called 911. (See id.)  NYPD Sergeant O'Leary responded to the complaint against Plaintiff and separated the parties. (See id.) Sergeant O'Leary is not a defendant in this matter. (See generally Compl.)

The next day, on November 1, 2022, Plaintiff went back to X Corp.'s headquarters because he wanted to hand-deliver mail to Elon Musk himself.  (See Compl. p. 12 ¶ 40).  Specifically, Plaintiff wanted to deliver his own blog post "The Twitter Coup," to Elon Musk. (See Compl. p. 12 ¶ 39.)  As Plaintiff stood outside of X Corp's headquarters, waiting for Elon Musk, he got into an altercation with two individuals, one female and one male. (See generally Compl. p. 12-14). Plaintiff has identified these individuals in the Complaint as "Jane Doe 1" and "John Doe 2." (Compl. p. 14 ¶43-46, p. 16  ¶56-57, p. 17 ¶59 ).  As Plaintiff notes in the Complaint, he recorded this altercation. (Compl. p. 14, ¶ 45). Plaintiff sent the undersigned a copy of the footage. (See Anderson Decl., Ex. A, Goodman Video Footage).  The video footage depicts Plaintiff call the "Jane Doe" various names, such as "fat little midget bitch," (Anderson Decl., Ex. A at 2:46), "fucking cunt," and a "pile of shit." (Anderson Decl., Ex. A at 3:29-06:30).  Further, Plaintiff yells at the "Jane Doe" stating "you can't even speak English[2]" (Anderson Decl., Ex A 5:10-5:15), and "you don't even look like you could step off a toilet without help you fat little midget." (Anderson, Decl., Ex. A at 5:25-5:20). "Jane Doe 1" exchanges words with the Plaintiff in the footage too, stating, among other things, that he is a "fagot," and responds to some of the Plaintiff's comments about her, *i.e.*, that she is a "bitch," by

---

[2] During the course of the video, it appears as if the "Jane Doe" speaks fluent English.

stating "that's your mother."  As the verbal altercation continued, the "Jane Doe 1" waved her pen at a certain point, and the Plaintiff stated "come at me you fat little cunt." [Anderson, Ex. A, 9:55- 10:05]. Plaintiff then hit her pen, and a young man who was accompanying the Jane Doe 1 stated "back up, back up" and appears to have pushed Plaintiff into a wall. [Anderson Ex. A, 9:45-10:30].  Plaintiff alleges that at this point the young man, "John Doe 2," choked him. (Compl. p.16-17 ¶ 57-59.).  Plaintiff then called 911, and all of the parties stayed at the scene. (Compl. p.17-18 ¶ 64-65).

Defendants Ebrahim, Castro, and Caruso, along with other NYPD officers arrived at the scene. (Compl. p.18 ¶ 66).  The members of service spoke with both parties, and Lieutenant Ebrahim appears to have viewed some footage of the event.  Anderson Decl. Ex. A, 23:30-24:00. Based upon the footage of the encounter, Lieutenant Ebrahim decided to issue a summons to both the Plaintiff and the "John Doe 2" individual. Id., see also Anderson Decl., Ex. A, 34:12-34:30.

Four days later, Plaintiff went to the 10th Precinct and requested to speak with Officer Castro.  Plaintiff asked to file a report about the incident that had happened and that was investigated already on November 1, 2022.  Officer Castro did not take the report and Officer Garcia went out to interact with Plaintiff.  Plaintiff claims that neither Officer Castro nor Officer Garcia took a report. (Compl. p.19-20 ¶ 71-73).

Then, on November 6, 2022, Plaintiff, "in what can only be described as a remarkable coincidence," ran into Lieutenant Ebrahim at the New York City Marathon. (Compl. p. 21 ¶ 75). He told the Lieutenant that he had evidence of a neck injury on his phone and Lieutenant Ebrahim told him to go to the 10th Precinct, stating that they would take a report for him.  (Id.). Officer Powlett began speaking with the Plaintiff about his complaint, Plaintiff

3

recorded this interaction. However, as he was interviewing Plaintiff, he received a phone call that he needed to take. Compl. p. 21-22 ¶ 76.  Once the phone call was over, Officer Powlett asked Plaintiff to come inside the precinct, and to stop recording on his phone when inside the precinct. (Id.).  Plaintiff alleges that he did not file a report as the "conversation deteriorated rapidly" according to the Plaintiff. (Id.).

## STANDARD OF REVIEW

A pleading may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a motion to dismiss, a district court must "accept as true all factual claims in the complaint, and draw all reasonable inferences in the plaintiff['s] favor." In re Aluminum Warehousing Antitrust Litig., 833 F.3d 151, 157 (2d Cir. 2016). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. A party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations and citations omitted); see also In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) ("While [Twombly] does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible.").  A court should therefore dismiss a complaint when it appears that a plaintiff has failed to plead a plausible claim of relief. See Spagnola v. Chubb Corp., 574 F.3d 64, 67 (2d Cir. 2009).

Furthermore, "when the plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." McEachin v.

4

McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004) (citation omitted). Nevertheless, "a *pro se* litigant [is] bound by the same rules of law . . . as those [litigants] represented by counsel." Fertig v. HRA Med. Assistance Program, 10 Civ. 8191 (RPP), 2011 U.S. Dist. LEXIS 48789, at *4 (S.D.N.Y. May 6, 2011) (quotations and citation omitted).[3]

In deciding a motion to dismiss, courts may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009).  "Courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." McDowell v. Gonzalez, 424 F. Supp. 3d 1214, 1220 (quoting ADA v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 682). On a 12(b) motion, courts are generally limited to the facts contained in the complaint and attached exhibits. McDowell v. Gonzalez, 424 F. Supp. 3d 1214, 1220 (quoting Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009); see also Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002))). When a Plaintiff references a video in the pleadings itself, a Court may consider that footage. See Moran v. Town of Greenwich, 2021 U.S. Dist. LEXIS 152604, at *15 (dismissing Plaintiff's claims and considering body worn camera footage when it was referenced in the Plaintiff's Complaint) see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (a court need not convert a motion to dismiss into a motion for summary judgment when it considers "'any written

---

[3] Pursuant to Local Civil Rule 7.2, City Defendants provided Plaintiff copies of all decisions cited herein which are unreported or reported exclusively on computerized databases.

instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference[,]'" and noting that "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995))). Thus, the Court can rely on the attached video submitted by Plaintiff to the undersigned detailing the events leading up to the issuance of a summons for disorderly conduct.

Here, relying on Plaintiff's allegations in the Complaint, all of the Plaintiff's claims against the City Defendants must be dismissed, with prejudice, for the reasons set forth below.

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO STATE A CLAIM FOR UNLAWFUL DETENTION

Courts in this circuit have considered false arrest and unlawful detention claims to be substantially the same claim. Little v. City of New York, 487 F. Supp. 2d 426, 437 (S.D.N.Y. 2007). The primary distinction between the claims is that a "false arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way." Id. "[I]n all other respects, the two claims are synonymous." Id.[4]

Applying the false arrest framework, Plaintiff's unlawful detention claim fails. "Where a § 1983 plaintiff pleads false arrest, the lack of probable cause must be pleaded in the

---

[4] Courts have under certain circumstances recognized a separate claim of "unreasonably prolonged detention." Jackson v. City of N.Y., 29 F. Supp. 3d at 161, 178 (citing Russo v. City of Bridgeport, 479 F.3d 196 (2d Cir. 2007). However, Plaintiff is not asserting a claim for unreasonably prolonged detention and it is not relevant here. However, even if the Court did interpret Plaintiff's Complaint to assert such a claim, it fails.

complaint." <u>Chepilko v. Bushuyev</u>, 2016 U.S. Dist. LEXIS 150530, at *9 (S.D.N.Y. Oct. 28, 2016).  It must be more than invoking the legal term.  Courts have dismissed complaints that fail to "alleg[e] some plausible factual content as to why the arresting officers' belief that [the plaintiff] had committed a crime was not reasonable." <u>See</u> <u>Murchison-Allman v. City of New York</u>, 2016 U.S. Dist. LEXIS 44717, at *4 (S.D.N.Y. Mar. 31, 2016) (dismissing false arrest claim after declining to accept plaintiff's bare allegation that defendants lacked probable cause since plaintiff's complaint "alleges no facts to buttress" the allegation); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Corsini v. Brodsky</u>, 731 F. App'x 15, 18 (2d Cir. 2018) (upholding dismissal of plaintiffs false arrest claims since plaintiff fails to "plausibly to allege the lack of probable cause necessary to maintain such claims"); <u>Jackson v. Ramirez</u>, 2016 U.S. Dist. LEXIS 21619, at *8 (S.D.N.Y. Feb. 22, 2016) (dismissing false arrest claim where it "fails to plausibly allege a lack of probable cause").

Plaintiff, after calling 911 and claiming he was "choked," was issued a summons for disorderly conduct. (<u>See</u> Compl., Ex. F). Specifically, Plaintiff was issued a summons for violations of New York Penal Law §240.20(7), Creates Hazardous Physically Offensive Condition. (<u>Id</u>.) "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof… he creates a hazardous or physically offensive condition by any act which serves no legitimate purpose." (<u>See</u> NYPL §240.20(7)).   Nevertheless, the defendants need not have probable cause for the specific summons issued: all that was required to issue the summons was probable cause for *any* crime. <u>Devenpeck v. Alford</u>, 543 U.S. 146, 153-154.  Courts have repeatedly held that "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."  <u>Jaegly v. Couch</u>, 439 F.3d

149, 154 (2d Cir. 2006) (citing <u>Devenpeck v. Alford</u>, 543 U.S. 146, 153-154).  Under 240.20 (1), a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he engages in fighting or in violent, tumultuous, or threatening behavior. Under 240. 20 (2), a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he makes unreasonable noise. Under 240.20 (3), a person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he uses obscene language, or makes an offensive gesture.

"[D]isorderly conduct is a statutory creation.  Intended to include in the main various forms of misconduct which at common law would often be prosecuted as public nuisances … a common thread that ran through almost all of this legislation was a desire to deter breaches of the peace or, more specifically, of the community's safety, health or morals… . And, although it has always been difficult to essay any precise definition of breach of the peace … , this court has equated that term with public inconvenience, annoyance or alarm, the governing phrase of our current disorderly conduct statute" <u>People v. Weaver</u>, 16 N.Y.3d 123, 127-128 (quoting <u>People v Tichenor</u>, 89 NY2d 769, 773-774, 680 NE2d 606, 658 NYS2d 233 (1997)). A person may be guilty of disorderly conduct when it becomes "a potential or immediate public problem. <u>Weaver</u> 16 N.Y.3d 123 at 128 (internal quotations omitted). "In assessing whether an act carries public ramifications, relevant factors to consider are the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances." <u>Id.</u>

8

Any "detention" of the Plaintiff was justified, as there was probable cause to issue him the summons.  All of the disorderly conduct factors listed above weigh in favor of issuing a summons as Plaintiff's inappropriate actions carried public ramifications.  The first factor, the time and place of the episode under scrutiny, favors issuing a summons. The incident in question was in public on West 17th Street in Manhattan. (Compl. p. 10 ¶ 31). The second factor, the nature and character of the conduct, also favors the Defendants. Plaintiff admits that he participated in a fight.  (Compl., p. 16-17 ¶ 58-63).  Furthermore, he states that he threw Jane Doe's pen to the ground. (Compl. p. 16 ¶ 56). He notes that he antagonized the "Jane Doe" telling her "[y]our young friend is going to be arrested for assault," (Compl. p. 18 ¶ 64), and that he "admonished" a New York City Police Officer. (Compl. p. 18 ¶ 66).  The third factor, the number of people in the vicinity, also weights in Defendants favor.  Plaintiff himself stated that there was a witness to the event, (Compl. p. 16 55-57), and the video footage, which is incorporated into the Complaint, shows a handful of individuals close to the encounter (Anderson Decl., Ex. B at 7:19). The video footage also shows the Plaintiff shouting obscenities and causing a scene in a way where he is intending to draw attention from others. (Anderson Decl., Ex. A, at 2:21-9:45).   Indeed, plaintiff himself admits that he was trying to alert a bystander, whom he believed was security for X Corporation that the "Jane Doe" had baseballs in her pockets. (Compl. p. 15-16 ¶ 52-53). Plaintiff created a hazardous condition for bystanders and everyone that was in the general vicinity as he was attempting to cause alarm for the purported "baseballs" that were on the "Jane Doe" claiming that if he was Twitter's security, he would be concerned that the Jane Doe would throw the baseballs at Elon Musk.

Additionally, [i]t is "well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or

eyewitness". <u>Wieder v. City of New York</u>, 569 F. App'x 28, 29 (2d Cir. 2014) (quoting <u>Panetta v. Crowley</u>, 460 F.3d 388, 395 (2d Cir. 2006); <u>see</u> <u>Wahhab v. City of New York</u>, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005) ("probable cause will generally be found to exist when an officer is advised of a crime by a victim or an eyewitness").

   In addition to all of the reasons stated above showing why this display was indeed public, it is very clear that the conduct at issue was obscene. Plaintiff is seen screaming that the "Jane Doe" is a "fat midget bitch" and a "cunt." That is obscene language, and his conduct, was public.  He stated this loudly and continued to make statements of that nature throughout the course of the altercation.  Video footage of Plaintiff doing just that was shown to Lieutenant Ebrahim, and at that moment in time, there was probable cause to issue Plaintiff the summons. Accordingly, Plaintiff fails to state a claim for unlawful detention.

**POINT II**

**PLAINTIFF FAILS TO STATE A
<u>SUBSTANTIVE DUE PROCESS CLAIM</u>   **

   In order to state a claim for substantive due process violations predicated on racial animus, a Plaintiff must "claim: (1) a valid property interest or fundamental right; and (2) that the defendant infringed on that right by conduct that shocks the conscience or suggests a gross abuse of governmental authority." <u>Morgan v. United Fed. of Teachers</u>, 2023 U.S. Dist. LEXIS 99543, *11 (citing <u>King,</u> 212 F. Supp. 3d at 401).  Plaintiff, conclusorily alleges that the City Defendants violated him based on his race, despite not making any substantive allegations against them in this context.  Plaintiff claims that John Does, who are not identified as police officers said "Black Lives Matter motherfucker" to him. (Compl., p. 11¶ 35).  This is not a denial of a substantive due process right. Additionally, Plaintiff makes no allegations that any of the City Defendants behaved in a way that made them personally involved in denying him due

10

process rights.  (See Point III *infra*).  Accordingly, Plaintiff due process claim against the City defendants fails.

### POINT III

**PLAINTIFF FAILS TO ALLEGE THAT THE CITY DEFENDANTS WERE PERSONALLY INVOLVED IN ANY DUE PROCESS VIOLATIONS CLAIMS OR IN ANY EXCESSIVE FORCE CLAIMS**

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege facts demonstrating each Defendant's personal involvement in the alleged § 1983 violation. See Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001). Specifically, "a plaintiff must plead that each Government-official defendant, though the official's own individual actions, has violated the constitution." Tangreti v. Bachmann, 983 F.3d 609, 616 (2d Cir. 2020) (quoting Ashcroft, 556 U.S. at 676). Accordingly, allegations that discuss several individual defendants "together without pleading facts demonstrating what each did that makes him liable are impermissible to allege personal involvement." Taylor v. Microgenics Corp., No. 21 CV 6452 (VB), 2023 U.S. Dist. LEXIS 22561, at *22 (S.D.N.Y. Feb. 9, 2023).

In the Complaint, Plaintiff attempts to assert a "violation of due process and racial discrimination" claim.  However, such claim fails as he does not state any facts that make the City Defendants personally involved in this alleged denial.  Additionally, Plaintiff also fails to make any factual allegations that any member of the NYPD used any force on him at all, never mind excessive force.  Accordingly, these claims should be dismissed.

## POINT IV

## PLAINTIFF'S        FIRST        AMENDMENT
## RETALIATION CLAIM FAILS

"To prevail on this free speech claim, plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (citing Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998). Private citizens alleging "retaliation for their criticism of public officials have been required to show that they suffered an "actual chill" in their speech as a result." Zherka v. Amicone, 634 F.3d 642, 645. The requirement that plaintiffs allege "actual chilling" ensures an identified injury to one's right to free speech is established. Hurt feelings or a bruised ego are not by themselves the stuff of constitutional tort. Zherka 634 F.3d 642, 645-646 (citing Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004)).

As it relates to the City Defendants, Plaintiff makes no allegations that any member of the New York City Police Department attempted to retaliate against his right to free speech. Thus, this claim also fails. Plaintiff states that he was subjected to excessive force and unlawfully detained because Plaintiff reported about X Corp. (Compl. p. 30 ¶ 104-5). He attempts to argue that because he was engaging in constitutionally protected activities, "specifically journalism," any consequences that followed his activities were retaliatory. (Id.) For the reasons stated in Point II supra, Plaintiff does not allege personal involvement of any of City Defendants in any excessive force claim. For the reasons stated in Point I supra, Plaintiff was not unlawfully detained. Specifically, just because Plaintiff was arrested for disorderly conduct, does not mean he was being retaliated against for exercising his first amendment rights. As explained in Point I supra, Plaintiff's actions carried public ramifications and as such he was

12

issued a summons.  As further noted in Point I *supra*, there was probable cause to issue that summons.  Thus, Plaintiff fails to meet the second element of a freedom of speech claim, as the defendants had probable cause to issue the summons.  See Curley 268 F.3d 65, 73 (dismissing Plaintiff's first amendment retaliation claim holding "because defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken." (internal quotations omitted). Thus, there is no retaliatory act that Plaintiff can plausibly be referring to. As such, his first amendment retaliation claim fails.

## POINT V

## PLAINTIFF'S CONSPIRACY CLAIM FAILS

To the extent that Plaintiff is asserting a conspiracy claim, such claim fails.  First, even if the facts of the pleading were accepted as true, and the John and Jane Does that Plaintiff is attempting to sue worked for the NYPD, any conspiracy claim against them would be barred by the "'intra- corporate conspiracy' doctrine [which explains that] the officers, employees, and agents of the same corporate entity acting within their scope of employment, along with the corporate entity itself, are considered a single entity and are legally incapable of conspiring with each other." Biswas v. City of N.Y., 973 F. Supp. 2d 504, 534 (S.D.N.Y. 2013) (citations omitted); see also Zilioli v. City of N.Y., 17 Civ. 9495 (WHP), 2020 U.S. Dist. LEXIS 57704, at *12 (S.D.N.Y. Apr.1, 2020) ("[D]istrict courts have routinely applied the logic of the intra-corporate conspiracy to §1983 claims.").

Furthermore, in order to prove a § 1983 conspiracy claim, a plaintiff must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants

have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." McDaniel v. City of New York, 585 F. Supp. 3d 503, 521 (S.D.N.Y. Feb. 15, 2022) (citation and quotation omitted). When a plaintiff fails to allege specific facts that defendants acted pursuant to an agreement to violate a plaintiff's rights, a § 1983 conspiracy claim must be dismissed. See McDaniel 585 F. Supp. 3d 503 at 521. Here, Plaintiff does not allege any specific *facts* to plausibly explain how defendant police officers acted pursuant to an agreement to violate constitutional rights. Although Plaintiff notes that he has various "suspicions" he alleges no facts. As noted in X Corps' motion papers, Plaintiff stated that the call between Officer Powlett, who is not even a defendant in this case, and someone allegedly from Google, "caused [Plaintiff] to *suspect* that some… arrangement *could have been made* with Musk, X Corp[.], . . . John Doe 1 or *another third party* which allowed Musk's private security to carry concealed firearms within New York City." Id. (emphasis added). Plaintiff also alleges that because he was not choked violently by the John Doe 2 individual, that this "caused him to believe" that the John Doe 2 individual was an undercover New York City Police officer. *(*Compl., p. 17 ¶59). Plaintiff's suspicions do not amount to actual constitutional rights violations. Thus, any purported § 1983 conspiracy claim should be dismissed.

## POINT VI

**PLAINTIFF'S STATE LAW CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED**

Plaintiff has failed to establish a prima facie case of intentional infliction of emotional distress. A cause of action for intentional infliction of emotional distress has four essential elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the

conduct and injury; and (4) severe emotional distress. Howell v. New York Post Co., 81 N.Y.2d

115, 121 (Ct. App. 1993); Natoli v. City of Kingston, 600 N.Y.S.2d 780, 781 (App. Div. 1993);

Richard L. v. Armon, 536 N.Y.S.2d 1014, 1015 (App. Div. 1989); see also Wahlstrom v. Metro-

North Commuter R.R., 89 F. Supp. 2d 506, 529 (S.D.N.Y. 2000) (recognizing elements of

intentional infliction of emotional distress under New York law).  Not only must plaintiff prove

these four essential elements, New York courts recognize that the standard of proof is rigorous

and these elements are difficult to prove. See, e.g., Fischer v. Maloney, 43 N.Y.2d 553, 557 (Ct.

App. 1978) (dismissing claim for intentional infliction of emotional distress because conduct did

not rise to the level of outrageous conduct); see also Natoli v. City of Kingston, 600 N.Y.S.2d

780, 781 (App. Div. 1993) (dismissing claim for intentional infliction of emotional distress when

plaintiff failed to show behavior rising to the requisite level of 'outrageous' and when the

pleadings and affidavit was devoid of any indication that plaintiff actually suffered emotional

distress as a result of defendant's conduct).

In order to state a claim for intentional infliction of emotional distress, a plaintiff

must allege conduct which is "so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community." Murphy v. American Home Products Corp., 58 N.Y.2d 293, 303, 461

N.Y.S.2d 232 (1983); Russell v. Meat Farms, Inc., 160 A.D.2d 987, 554 N.Y.S.2d 709 (2d Dep't

1990).  In Howell, supra, Chief Justice Kaye stated that this first element (outrageous conduct)

"serves the dual function of filtering out petty and trivial complaints that do not belong in court,

and assuring that the plaintiff's claim of severe emotional distress is genuine." Howell, supra, 81

N.Y.2d at 121. The Howell court recognized that the standard in this area is extremely high and

noted that "*of the intentional infliction of emotional distress claims considered by this Court,*

*every one has failed because the alleged conduct was not sufficiently outrageous*." Id. (citing Freihofer v. Hearst Corp., supra, 65 N.Y.2d at 143-144); Burlew v. American Mutual Insurance Co., 63 N.Y.2d 412, 417-418, 482 N.Y.S.2d 720 (1985); Murphy, supra, 58 N.Y.2d at 303; Fischer v. Maloney, supra, 43 N.Y.2d at 557 (emphasis added).  Here Plaintiff alleges that police officers wrote him a summons, and did not take a police report.   This is not extreme and outrageous.

Moreover, "[i]n New York, 'intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort,' when traditional tort remedies are unavailable."  Moore v. The City of New York, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (citing EEOC v. Die Fliedermaus, L.L.C., 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999)(quoting McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 256 A.D.2d 269, 682 N.Y.S.2d 167, 169 (1st Dep't 1998)).  "Accordingly, 'no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability.'" Moore v. The City of New York, 219 F. Supp. at 339 (quoting Hansel v. Sheridan, 991 F. Supp. 69, 75 (N.D.N.Y. 1998).  Here any conduct that Plaintiff could be referring to when he conclusory states that he is suing for intentional infliction of emotional distress would be, if it were plausibly plead, covered by another tort.

### POINT VII

### ANY MUNICIPAL LIABILITY CLAIM THAT PLAINTIFF IS PURPORTING TO MAKE IN THE INSTANT MOTION FAILS

In order to hold a municipality liable under Section 1983, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southhold, 48 F.3d 674, 685 (2d Cir. 1995) (citations omitted); see also Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-

91 (1978). A municipality may not be held liable under Section 1983 on the basis of *respondeat superior*. Monell, 436 U.S. at 694-95. Instead, a plaintiff must show both that the municipality had a specific policy or custom and that such policy or custom resulted in the deprivation of plaintiff's constitutional rights. Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert. denied, 480 U.S. 916 (1987). "The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). Furthermore, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

Here, Plaintiff merely alleges "[u]pon information and belief...defendants engaged in the acts complained of herein with respect to First Amendment-based claims, including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline - with malice." Compl. p. 30 ¶109.  First, Plaintiff did not suffer a constitutional violation, and at best, describes actions taken by individuals below the policymaking level, defeats any purported Monell claim. Lockwood v. Town of Hempstead, CV 16-3756 (SJF)(AYS), 2017 U.S. Dist. LEXIS 27339, *32 (E.D.N.Y. Feb. 24, 2017). ("Plaintiff's complaint contains ...no allegation [] regarding whether one or more individuals exercised the required 'final policymaking authority' in causing plaintiff's alleged injury. For these reasons, Plaintiff fails to demonstrate a Monell violation based upon the acts of an individual with policy making authority.").

Additionally, plaintiff has not identified any specific custom or policy that allegedly caused a constitutional deprivation. The "mere assertion...that a municipality has such

a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993). Insofar as plaintiff merely sets forth conclusory allegations of municipal policy and practice and fails to articulate any facts from which the Court may infer an actual causal link between said custom or policy and an alleged constitutional violation, the municipal liability claim fails. <u>See</u>, <u>e.g.</u>, <u>Cuevas v. City of New York</u>, No. 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *12 (S.D.N.Y. Dec. 7, 2009) ("Baldly asserting that Plaintiff's injuries are the result of the City's policies does not show this Court what the policy is or how that policy subjected Plaintiff to suffer the denial of a constitutional right.").

Accordingly, to the extent Plaintiff is asserting a municipal liability claim, the claim should be dismissed.

## POINT VIII

## PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS

Under New York law, to establish a claim of malicious prosecution, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." <u>Murphy v. Lynn</u>, 118 F.3d 938, 947 (2d Cir. 1997). In addition to these state law elements, a malicious prosecution claim brought under § 1983 requires showing "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." <u>Rohman v. New York City Transit Authority</u>, 215 F.3d 208, 215 (2d Cir. 2000). "[T]here must be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy

interests under the Fourth Amendment." Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 117 (2d Cir. 1995)).

Plaintiff fails to allege any favorable termination of a proceeding.  Additionally, Plaintiff did not suffer a sufficient post-arraignment liberty restraint as "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." Hawthorne v. Cty. of the Putnam, 492 F. Supp. 3d 281, 299-300 (quoting Burg v. Gosselin, 591 F.3d 95, 98 (2d Cir. 2010)).  Accordingly, Plaintiff's malicious prosecution claim fails.

**POINT IX**

**THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS, AND IN ANY EVENT, PLAINTIFF FAILS TO PLEAD COMPLIANCE WITH THE GENERAL MUNICIPAL LAW**

In the event that only state law claims survive dismissal, or to the extent that the Court reads-in to the Complaint any other state law claims that survive dismissal, the Court should respectfully decline to exercise supplemental jurisdiction over them. See Lanza v. Merrill Lynch & Co., 154 f.3d 56, 61 (2d Cir. 1998) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (although ultimately a matter of discretion for the district court, "the supreme court [has] held that when federal claims are dismissed the 'state claims should be dismissed as well'")).[5]

---

[5] In the event that any federal claims remain against the other defendants and only state law claims against the City Defendants remain, then the Court should exercise jurisdiction over the state law claims against the City Defendants.

## CONCLUSION

For the foregoing reasons, the City defendants respectfully request that the Court

grant their motion to dismiss the Complaint, with prejudice, together with such other and further

relief as the Court deems just and proper.

Dated:          New York, New York
                March 26, 2024

                                        **HON. SYLVIA O. HINDS-RADIX**
                                        Corporation Counsel of the City of New York
                                        *Attorney for defendants City of New York, Caruso,*
                                        *Garcia, Ebrahim, and Castro*
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-2415

                                        By:    *Mary Jane Anderson*          /s/
                                               Mary Jane Anderson
                                               *Assistant Corporation Counsel*
                                               Special Federal Litigation Division

Cc:      VIA FIRST CLASS MAIL & EMAIL
         Jason Goodman
         252 7th Avenue
         Apt. 6S
         New York, NY 10001
         truth@crowdsourcethetruth.org

         VIA ECF
         Counsel of Record