IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK          23-cv-09648-JGLC-GWG
-------------------------------------------------------------------X

                  JASON GOODMAN,

                          Plaintiff,                                    **AFFIDAVIT OF**
        -against-                                                          **JASON GOODMAN**

THE CITY OF NEW YORK and NEW YORK CITY
POLICE DEPARTMENT, NEW YORK CITY POLICE
DEPARTMENT LIEUTENANT GEORGE EBRAHIM,
NEW YORK CITY POLICE DEPARTMENT OFFICER
CHANDLER CASTRO, NEW YORK CITY POLICE
DEPARTMENT OFFICER JENNIFER CARUSO, NEW
YORK CITY POLICE DEPARTMENT OFFICER
KELVIN GARCIA, JOHN DOE 1, JOHN DOE 2, JOHN
DOE 3, JOHN DOE 4, JANE DOE, ELON MUSK, X
CORP, ADAM SHARP.
                               Defendants.
-------------------------------------------------------------------X

       I, Jason Goodman hereby affirm as follows:

       1.       I am over eighteen (18) years of age. I have never been convicted of a felony or any crime involving moral turpitude and I am competent to testify to all statements made herein.

       2.       I have personal knowledge of each and every statement made in this Affidavit and every such statement is true and correct, and sworn to under penalty of perjury.

       3.       I make and submit this Affidavit in support of my opposition to the City of New York and the NYPD defendants' motion to dismiss.

       4.       On November 1, 2022, I went to 249 West 17th Street with the good faith intention of alerting defendant Elon Musk ("Musk") of inappropriate FBI activity at defendant X Corp.

       5.       I approached John Doe 1, an individual I observed standing next to a Tesla model S with New Jersey license plates who I believed to be one of Musk's personal bodyguards.

6. Before I said a word, John Doe 1 alerted me that he could not receive any messages on behalf of Musk. This made it clear that he knew I had previously asked another individual I had previously observed tending to the car if he could transmit a message to Musk.

7. Instead, I asked if I could wait and personally hand Musk a letter myself when he walked out of the building, to which John Doe 1 said "yes". We exchanged pleasantries and I sat down on a standpipe approximately ten feet away from the car quietly minding my own business.

8. After I was seated, I began recording audio and video with my phone which captured nearly all of the interaction described in the complaint, more than thirty-nine minutes.

9. John Doe 2, John Doe 3, and Jane Doe walked about half a block from where they were at 249 West 17th street to where I was seated at 241 West 17th street and surrounded me.

10. John Doe 2 initiated a conversation by asking "how are you doing tonight?"

11. I informed him that their close proximity was making me uncomfortable and asked them to step back. They refused and told me I should leave.

12. They began aggressively taunting me and repeatedly suggested "throwing hands". I was immediately concerned that they would attack me, and I could be badly injured or killed.

13. When it became clear they would not leave, there was a verbal altercation that resulted in extremely foul language being used by all involved parties.

14. My participation in this verbal altercation was purely self-defense. My intent was to scare them off or draw attention to their imminent intent to harm me under the presumption that having witnesses would make harming me less attractive and therefore less likely.

15. After I did not respond to Jane Doe's juvenile taunts with the physical violence she repeatedly attempted to provoke, she became angry and assaulted me with a badge, striking me and my camera. This assault is clearly seen in the recorded video, but the badge is illegible.

16. The altercation then escalated, John Doe 2 put his hand around my neck, squeezed hard and pushed me against 241 West 17th Street's brick facade shouting "back up." I recall distinctly looking at John Doe 1 right in his eyes and on video I can be heard saying "You see this? Call the cops," just before my phone dropped to the ground and stopped recording.

17. After I called 911, I resumed recording. When the police arrived, they behaved unprofessionally. Defendant Castro laughed at me while I gave my report to Defendant Caruso.

18. Defendant Ebrahim arrived, interrupted Caruso's interrogation in an equally unprofessional and disorganized manner. Ebrahim viewed less than thirty seconds of the thirty-nine-minute video while no audio could be heard on the noisy street from the tiny phone speaker.

19. After this grossly insufficient "investigation" Ebrahim quickly determined there was no evidence of me being assaulted, and he is clearly recorded on video and audio stating, "Okay, well, at this time. At this time, you guys had a fight, obviously. Both of you. Okay? I don't know who's at fault, who's who started, who's not, so both of you going to get a, a, a, a criminal court summonses right now. And you going to talk to the judge and explain it to him."

20. Ebrahim's own statements as recorded on video prove that he did not evaluate the evidence and the NYPD had no legitimate basis for issuing me a disorderly conduct citation.

21. Immediately after the incident, I went home and photographed my neck which clearly showed red marks where John Doe 2's fingers pressed into my neck.

22. On or around the following day I went to the 10th Precinct to share the photo evidence with the good faith intent of updating the police report to accurately reflect the event.

23. Defendant Castro was visible through the open door of the 10th Precinct and when I spoke to him, he again behaved in an unacceptably unprofessional and antagonistic manner.

24. Castro refused to take a report, denied the existence of any evidence, and stated that there was no assault. This interaction was also recorded on video as stated in the complaint.

25. Several days later, I again encountered defendant Ebrahim in Columbus Circle. I showed him the photo evidence of the assault on my phone. He acknowledged the evidence, he acknowledged that he was previously unaware of this evidence and further instructed me to go to the 10th precinct where he assured me, they would take a report. This was also recorded on video.

26. I returned to the 10th precinct and attempted to make the report but instead met with the also unprofessional, uncooperative nonparty NYPD officer Matthew Powlett who ultimately failed to take any report. The interaction with Powlett was also recorded on video.

27. When I went to court to respond to the improperly issued summons, but before I could explain that it was wrongly issued, the judge quickly determined it was facially defective. The judge dismissed the case in my favor without saying another word.

28. On November 1, 2022, just prior to this abhorrent incident, I was minding my own business and keeping distance from everyone on a public street. I would not have said any of the things cited in the motion to dismiss were it not for the Doe defendants approaching me and deliberately antagonizing the verbal and physical altercation they eventually provoked.

29. No member of the public reacted or responded to the interaction between the Doe defendants and me to my knowledge, nor did any member of the public call the police.

30. The only alleged member of the public to witness the altercation was John Doe 1. His testimony to Defendant Caruso was recorded on my video and he claimed to see and hear nothing. This witness testimony contradicts the false claims in defendants' motion to dismiss and the false statements by Caruso as recorded in the facially defective summons.

31. The NYPD defendants lied on November 1, 2022, preventing the arrest of my assailants and preventing me from learning their identities or their motivation for attacking me.

32. The NYPD defendants now perpetuate these disgraceful lies in their misguided attempt to deceive the Court and dismiss my justified claims against them and other defendants.

Dated: New York, New York May 2, 2024

Jason Goodman

Pro Se Plaintiff
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-380-6998