IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK                      23-cv-09648-JGLC-GWG
----------------------------------------------------------------------X
                      JASON GOODMAN,

                              Plaintiff,                                      **OBJECTIONS TO**
                                                       **REPORT AND**
                    -against-                                        **RECOMMENDATION**

THE CITY OF NEW YORK and NEW YORK CITY
POLICE DEPARTMENT, NEW YORK CITY POLICE
DEPARTMENT LIEUTENANT GEORGE EBRAHIM,
NEW YORK CITY POLICE DEPARTMENT OFFICER
CHANDLER CASTRO, NEW YORK CITY POLICE
DEPARTMENT OFFICER JENNIFER CARUSO, NEW
YORK CITY POLICE DEPARTMENT OFFICER
KELVIN GARCIA, JOHN DOE 1, JOHN DOE 2, JOHN
DOE 3, JOHN DOE 4, JANE DOE, ELON MUSK, X
CORP, ADAM SHARP.
                                         Defendants.
----------------------------------------------------------------------X

        Plaintiff Jason Goodman respectfully submits these objections to Magistrate Judge Gabriel W. Gorenstein's Report and Recommendation ("R&R") dated [Insert Date]. Plaintiff contends that the R&R contains factual and legal errors that warrant its rejection by this Court.

    **I.**      **INTRODUCTION**

        26.     Plaintiff, Jason Goodman, brought this action against the City of New York, several NYPD officers, X Corp., Elon Musk, and Adam Sharp, alleging violations of his First and Fourth Amendment rights, among other claims. The core issue stems from Plaintiff's attempt to inform Elon Musk about alleged illegal actions by the FBI and former Twitter employees, leading to a confrontation outside Twitter's New York City headquarters.

    **II.**     **SPECIFIC OBJECTIONS**

        **A.  Objection to the Dismissal of Claims Against X Corp.**

27. The R&R concludes that X Corp. and its employees, and certain former employees including defendant Adam Sharp, were not acting under color of law but this conclusion is erroneous. Defendant X Corp, Twitter, at the time, was performing a public function by managing information dissemination that affected the public's perception of the 2020 presidential election in a technologically unprecedented way. Sharp participated in this directly and on behalf of X Corp even years after he was no longer employed there. The FBI's violation of the first and fourth amendment rights of citizens who were not suspected of crimes through unwarranted involvement with X Corp and its employees constitutes state action. Therefore, these employees, former employees, contractors or associates, including Sharp, and the Does acted under color of law by furthering the FBI's objectives, violating the First and Fourth Amendments, above and beyond the primary commercial objective of Twitter.

28. Plaintiff's complaint and opposition papers include detailed allegations of Twitter's coordination with the FBI to suppress information. These allegations are no longer even in dispute and are supported by public records and congressional testimony revealing the FBI's influence over Twitter during the relevant period including testimony from former FBI General Counsel Jim Baker who was fired by Defendant Elon Musk because he served the interests of the FBI over those of Twitter. On November 1, 2022, Baker and Twitter employees acting in his instructions were serving the interests of the FBI over Twitter. Non-party David George Sweigert's direct communication with Baker via email ten days before the altercation outside Twitter, further underscores the clandestine FBI state action involvement. Elon Musk revealed the FBI's infiltration after discovering it through company records post-acquisition and subsequently fired Baker in December 2022.

29. During a February 8, 2023 House Judiciary Committee hearing, former X Corp employees, including Jim Baker, testified about their actions and the influence of federal agencies, including the FBI, to suppress certain information. This is the same circumstance, and the same information Musk has publicly stated lead to Baker's termination from X Corp. This demonstrates a closer nexus between X Corp and FBI state action than recognized in the R&R. Musk himself confirm the FBI's involvement in X Corp's operations when he fired Baker due to his role in handling the Hunter Biden laptop story and the undue influence the incident was perceived to have had on the outcome of the presidential election.

30. We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," *Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U.S. 230, 231, 1 L. Ed. 2d 792, 77 S. Ct. 806 (1957) (per curiam), when it has been delegated a public function by the State, cf., e.g., *West v. Atkins*, supra, at 56; *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 627-628, 114 L. Ed. 2d 660, 111 S. Ct. 2077 (1991), when it is "entwined with governmental policies" or when government is "entwined in [its] management or control," *Evans v. Newton*, 382 U.S. 296, 299, 301, 15 L. Ed. 2d 373, 86 S. Ct. 486 (1966).

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n,* 531 U.S. 288, 296, 121 S. Ct. 924, 930 (2001)

31. Private parties become state actors when they willfully participate with state agencies and their agents. Willful participant[s] in joint activity with the State or its agents." Id. at 420. Because Martinez has not alleged Jones is anything other than a private individual or that she was "willful participant[s] in joint activity with the State or its agents," the Court finds his Complaint is frivolous and that it fails to state [*5] a claim upon which relief may be granted. See 28 U.S.C. §§ 1915(e)(2)(B)(i, ii), 1915A(b)(1).

32. *Martinez v. Jones*, No. SA-23-CV-00909-XR, 2023 U.S. Dist. LEXIS 151444, at *4-5 (W.D. Tex. Aug. 25, 2023)

33. "'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,'" quoting United States v. Price, 383 U.S., at 794.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941, 102 S. Ct. 2744, 2756 (1982)

### B. Objection to the Finding of Probable Cause

34. The R&R asserts that there was probable cause for issuing a summons for disorderly conduct, but this is factually incorrect. The NYPD defendants did not review the video evidence on Plaintiff's phone in a manner sufficient to make any determination of probable cause.  Lt. Ebrahim only viewed less than 30 seconds of the 39-minute video and by his own admission could not hear the audio.  He ignored the exculpatory evidence and failed to grasp the context and content of the interaction quickly determined he had no idea what happened.  The summons' dismissal for facial defects further proves there was no probable cause to issue it.

35. The video evidence and Plaintiff's testimony demonstrate that the officers did not perform a proper investigation. Additionally, John Doe one acknowledged his employment with Musk in conversation with Goodman. Doe one was observed and recorded witnessing the altercation.  When questioned by NYPD Defendant Caruso, Doe 1 falsely stated that he did not witness the event and left with video evidence of the incident that was recorded by the car.  The car's video Sentry mode can be seen operating in plaintiff's video evidence.  The other Doe defendants were present at the location two days in a row and were observed communicating and interacting with John Doe one in a way that suggests they knew each other and were working

together. The implications of John Doe one leaving with evidence of his putative fellow Musk employees attacking the plaintiff cannot be overlooked. The NYPD defendants made gross and verifiably false statements in their motion to dismiss. The statements are contradicted by video recordings already provided. Despite these facts, the report and recommendation would have the Court accept these false statements as facts, but that cannot be allowed.

36. Gerstein v. Pugh, 420 U.S. 103, 111 (1975): Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Gerstein v. Pugh, 420 U.S. 103, 111 (1975)*

37. Material omissions or misstatements by police can vitiate probable cause. Given (a) the substantial [**16] showing in the present case that appellants' presentations in support of probable cause contained numerous significant misstatements and omissions, and (b) the limitations on Golino's ability to present his own evidence and to gain access to undisclosed significant facts known to the police in order to cross-examine the state's witnesses, we conclude that the 1984 state hearing did not provide Golino a full and fair opportunity, for collateral estoppel purposes, to litigate the issue of probable cause. Accordingly, the district court properly ruled that the probable cause decision of Judge Kinney should not be given preclusive effect.

*Golino v. New Haven,* 950 F.2d 864, 870 (2d Cir. 1991)

### C. Objection to the Handling of Video Evidence

27. The R&R states that the officers reviewed the video evidence on Plaintiff's phone, but this statement is inaccurate. Lt. Ebrahim's review of the video was less than cursory and wholly insufficient to make any determination. He only viewed mere seconds of the lengthy video without audio, and this review did not provide even the remotest understanding of the

events. Had the lieutenant conducted a proper investigation and watched the video listening to the sound at sufficient level to substantially understand, or if he had examined Goodman's neck in response to complaints of choking, he would have observed exculpatory evidence with regard to probable cause, but he failed to conduct an adequate investigation.

28. The Goodman was minding his own business when a pack of three individuals came up and irritated him. Agitated him provoked him, then struck him, then choked him prompting him to call 911 for the court to split with regard to the foul language selected in a moment of sheer terror does not serve justice. Goodman was assaulted by three individuals, and the moment where he thought he could suffer grave bodily harm, he said whatever came to his mind, nothing he did warranted the physical assault. Had lieutenant Ibraham or the other officers watched the video with the intent of understanding the altercation and serving justice, they would have realized there was no probable cause to issue Goodman the facially defective summons. Only by ignoring exculpatory evidence in Goodman's video and red marks on Goodman's neck where Joe Doe 2 had grabbed him.

29. Lt. Ebrahim's own words and actions and the detailed timeline of events captured in the 39-minute video contradict the false claims the report and recommendation would have the Court accept. No adequate investigation was conducted and there was no probable cause to issue Goodman a summons. "Law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as law enforcement would not be unduly hampered if the agents wait to obtain more facts before seeking to arrest."

*Kuehl v. Burtis,* 173 F.3d 646, 648 (8th Cir. 1999)

30.        • Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004): An officer may not ignore exculpatory evidence that negates probable cause.

31.        • Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999): Police officers have a duty to conduct a reasonably thorough investigation before making an arrest. Nxt

### D. Objection to Denial of Leave to Amend

32.        The R&R instructs the Court to deny Plaintiff the opportunity to amend the complaint to cure any deficiencies. Even if the Court finds that Plaintiff's claims fail as currently pled, Plaintiff should be granted leave to amend. And very least defendants ex Corp. and Elon Musk should be compelled to reveal the identity of John Doe one and admitted employee of Elon Musk who lied to the police and left the scene with evidence of assault. Although play disagrees with the report and recommendations conclusions if the court should adopt them and dismiss this case, it should at least allow Goodman an opportunity to amend the filing. Goodman's process status should cause the court to constr these claims in the manner most favorable to the plaintiff. Plaintiff was minding his own business, and he was attacked. The police and the police have lied possibly be construed as justice. Goodman should at least be granted leave to amend and form a more suitable complaint based upon on a suitable cause of action for just that circumstance.

33.        Plaintiff's conversation with John Doe 1 confirmed his employment with Musk, and plaintiff's video evidence contradicts John Doe 1's cla8ms regarding witnessing the altercation and confirms him lying to the police. The Tesla car he left in had been operating in Sentry mode and recorded the entire incident, which can be corroborated through discovery.

34.        In the absence of any apparent or declared reason, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc., the leave sought to amend a complaint should, as the rules require, be "freely given." The grant or denial of an opportunity to amend is within the discretion of the district court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules of Civil Procedure.

*Foman v. Davis,* 371 U.S. 178, 179, 83 S. Ct. 227, 228 (1962) Next

### E. Objection Based on Non-Party Interference

35.     The R&R does not adequately consider the impact of non-party interference on the proceedings. Non-party David George Sweigert has persistently interfered in this case, including sending a harassing letter to the attorney for the City of New York in which Plaintiff is referred to as a "f***ing Jew". Sweigert's direct communication with X Corp's now fired deputy general counsel Baker while he was still at Twitter just days before the altercation, coupled with his ongoing harassment, suggests a coordinated effort to disrupt Plaintiff's activities and influence the outcome of this case.

36.     Exhibit A of the previously filed motion for contempt demonstrates Sweigert's inappropriate and unnecessary communication with the City's counsel. Additional evidence shows Sweigert's harassment and direct interference with the case, including his FOIL requests and defamatory emails. His involvement in contacting the FBI and Twitter employees, and attempting to incite legal actions against Plaintiff, fits his well-established pattern of interference.

### F. Objection to the Refusal to File a Police Report as a First Amendment Violation

37.     The R&R does not consider the refusal by defendants Castro and Garcia to file a police report as a separate First Amendment violation, but the refusal does constitute a separate

First Amendment violation. Plaintiff's attempt to report the incident and the refusal to take the report were retaliatory actions intended to suppress Plaintiff's exercise of his First Amendment rights. This aspect has been overlooked in the Report and Recommendation.

38. On November 5, 2022, Plaintiff went to the 10th Precinct to file a report about the assault. Defendants Castro and Garcia refused to take the report, dismissing Plaintiff's attempts to present evidence and insisting there was no assault. This refusal, coupled with their unprofessional and hostile behavior, obstructed Plaintiff's right to report a crime and seek redress. Additionally, the threat to call an ambulance as a veiled threat of involuntary incarceration further exemplifies their retaliatory intent. This was not addressed adequately in the Report and Recommendation and is grounds for its rejection.

## CONCLUSION

39. For the foregoing reasons, Plaintiff Jason Goodman respectfully requests that the Court reject the R&R in the parts objected to and allow this case to proceed against X Corp., Elon Musk, Adam Sharp, and the City defendants. Alternatively, Plaintiff requests leave to amend the complaint to proceed to discovery regarding Doe defendant identities.

Dated: New York, New York August 8, 2024

Respectfully submitted,

Jason Goodman
Pro Se Plaintiff
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-380-6998